TICKET CONTRACT

**IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**

**NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.**

**IMPORTANT TERMS AND CONDITIONS OF CONTRACT –
READ CAREFULLY**

In consideration of the receipt of the full cruise fare, Carnival Cruise Lines ("Carnival") agrees to transport Guest on the above - specified voyage on the following terms and conditions:

**1. DEFINITIONS AND SCOPE OF CONTRACT**
(a) Whenever the word "Carnival" is used in this Contract it shall mean and include the Vessel, its owners, operators, employees, agents, charterers and tenders. The term "Guest" shall include the plural where appropriate, and all persons or entities booking or purchasing passage and/or traveling under this Contract, including heirs, representatives and any accompanying minors. The masculine includes the feminine. "Guest" shall have the same meaning as "Passenger" in this Contract.

(b) "Cruise Fare" or "Fare" means the amount paid for the cruise which includes full board, ordinary ship's food during the voyage, but not spirits, wine, beer, soft drinks or mineral waters, shore excursions, salon and spa services, or any other incidental charge or expense. The cruise fare shall be deemed to be earned when paid and not refundable except as stated in Carnival's brochure applicable to the voyage and as provided in Clauses 7 and 8, herein.

(c) Cruise Fare does not include Government taxes and fees imposed or sanctioned by the U.S. Government or other Governments. "Government fees and taxes" may include any and all fees, charges, surcharges, tolls and taxes imposed by U.S. and/or foreign governmental or quasi-governmental authorities including, but not limited to, U.S. Customs fees, Guest Facility Charges, Security Surcharges, International Passenger Departure or Arrival Tax, Agricultural Inspection Fee, head taxes, Panama Canal tolls, dockage fees, wharfage fees, inspection fees, taxes on airline transportation, hotel or VAT taxes incurred as part of a land tour, immigration and naturalizations fees, and Internal Revenue Service fees, whether assessed on a per Guest, per berth, per ton or per vessel basis. In the case of per ton or per vessel assessments, those assessments will be spread over expected Guest counts.

(d) Cruise Fare does not include fuel supplement charges. "Fuel supplement" shall mean any additional charge to defray a portion of Carnival's fuel costs. The amount of fuel supplements and government fees and taxes collected are subject to change. Carnival reserves the right to charge a fuel supplement of up to $9.00 per person per day, without prior notice, in the event that the price of light sweet crude oil according to the NYMEX (New York Mercantile Exchange Index) is greater than $70.00 per barrel of oil. Carnival may collect any fuel supplement in effect at the time of sailing, even if the cruise fare has been paid in full.

(e) This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent. The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this cruise Contract.

(f) All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limited to, shore excursion or tour operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival.

(g) This contract constitutes the entire agreement between Carnival and Guest and supersedes all other agreements, oral or written. Any alteration to any term of this contract must be in writing and authorized by Carnival. Except as provided in Clause 13 below, should any provision of this contract be contrary to or invalid by virtue of the law of the jurisdiction in which this contract is sought to be enforced or be so held by a court of competent jurisdiction, such provision(s) shall be deemed to be severed from the Contract and of no effect and all remaining provisions herein shall be in full force and effect and constitute the Contract of Carriage.

## 2. NATURE OF CRUISE AND GUEST'S OBLIGATIONS

(a) The Guest admits a full understanding of the character of the Vessel and assumes all risks incident to travel and transportation and handling of Guests and cargo. The Vessel may or may not carry a ship's physician or other medical personnel at the election of Carnival. While at sea or in port the availability of medical care may be limited or delayed. Guest acknowledges that all or part of their voyage may be in areas where medical care and evacuation may not be available. Guest agrees to indemnify and reimburse Carnival in the event Carnival elects to advance the cost of emergency medical care, including medical care provided ashore as well as transportation and/or lodging in connection therewith.

(b) Carnival's vessels visit numerous ports in a number of countries. Guests assume responsibility for their own safety and Carnival cannot guarantee Guest's safety at any time. The United States Department of State, Centers for Disease Control and Prevention and other governmental and tourist organizations regularly issue advisories and warnings to travelers and Carnival strongly recommends Guests obtain and consider such information when making travel decisions. Carnival assumes no responsibility for gathering said information. The Guest acknowledges that the cruise may be booked in a location that is susceptible to severe weather systems, including but not limited

to, hurricanes, tropical storms and depressions, and that Carnival reserves the right to alter the ship's course, ports of call, itinerary, activity and shore excursions to avoid such weather systems and insure the comfort and safety of the Guest and crew.

(c) Proper travel documentation is required at embarkation and throughout the cruise. It is the guest's sole responsibility to bring and have available at all times all required travel documents. Guests are advised to check with their travel agent or the appropriate government authority to determine the necessary documents. Any guest traveling without proper documentation will not be allowed to board the vessel and no refund of the cruise fare will be issued.

(d) Guest acknowledges receipt of Carnival's applicable brochures and agrees to abide by the terms and conditions of Carnival's brochures and web site, including but not limited to the information contained in the "Frequently Asked Questions" and "Embarkation Information" sections.

(e) Guest acknowledges that, for a voyage commencing in a United States port for a round-trip voyage via one or more United States ports, Guest must complete the voyage and disembark at the embarkation port. Failure to do so may result in a fine or penalty being imposed by the United States Customs Service or other governmental agency. In consideration for the fare paid, Guest agrees to pay any such fine or penalty imposed because of Guest's failure to complete the voyage.

(f) Carnival shall refuse boarding to any Guest under the age of twenty-one unless: (1) the Guest is traveling in the same stateroom with an individual twenty-five years or older; (2) traveling in the same stateroom with their spouse; or (3) traveling with a parent or guardian in an accompanying stateroom. Proof of age and/or proof of marriage are required. Carnival shall not be liable to make any refunds or for any damages with respect to any Guest's failure to provide proper proof of age or marriage or otherwise comply with this provision.

**3. YOUR TRAVEL AGENT**
Any travel agent or sales agent utilized by the Guest in connection with the booking of the cruise, or this contract is solely the agent of the Guest and not Carnival. Carnival is not responsible for the financial condition or integrity of any travel agent utilized by Guest. In the event that an agent shall fail to remit to Carnival any monies paid to the agent by Guest, Guest shall be and remain liable for the fare due to Carnival, regardless of whether liability is asserted before or after embarkation. Issuance and validity of ticket contract is conditional upon final payment being received by Carnival prior to sailing. Any refund made by Carnival to an agent on behalf of Guest shall be deemed payment to Guest, regardless whether the monies are delivered by the agent to Guest. Receipt of this ticket contract, any other documentation or notification pertaining to the cruise by Guest's travel agent shall constitute receipt by Guest.

**4. BAGGAGE, PERSONAL PROPERTY, PROHIBITED ITEMS, LIMITATION OF LIABILITY**
(a) Each fully paid adult Guest will be allowed a reasonable amount of luggage on board containing their personal belongings. Luggage means only trunks, valises, satchels, bags, hangers and bundles with their contents consisting of only such wearing apparel, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the journey.

(b) No tools of trade, household goods, presents and/or property of others, jewelry, money, cameras, documents, valuables of any description including but not limited to such articles as are described in Title 46 of the United States Code section 30503 shall be carried except under and subject to the terms of a special written contract or Bill of Lading entered into with Carnival prior to embarkation upon application of the Guest. The Guest warrants that no such articles are contained in any receptacle or container presented by him as baggage hereunder, and if any such articles are shipped in the Guest's baggage in breach of this warranty, no liability for negligence, gross or ordinary, shall attach to Carnival for any loss or damage thereto.

(c) Carnival shall not be liable for: (1) Guest's failure to comply with the requirements set forth in Clauses 4(a) and 4(b); (2) any loss or damage before baggage comes into Carnival's actual custody on board or after baggage leaves Carnival's actual custody on board, including, but not limited to, loss or damage by airlines or other transportation services; (3) any loss or damage of baggage while not in the actual possession, custody and control of Carnival; (4) damage due to wear, tear or normal usage; (5) any loss or damage of perishable items, medicine, liquor, cash, securities or other financial instruments, or (6) any loss or damage while in the custody and control of stevedores.

(d) It is stipulated and agreed that the aggregate value of Guest's property, does not exceed $50 per guest or bag with a maximum value of $100 per stateroom regardless of the number of occupants or bags and any liability of Carnival for any cause whatsoever with respect to said property shall not exceed such sum, unless the Guest shall in writing, delivered to Carnival, prior to embarkation, declare the true value thereof and pay to Carnival prior to embarkation a sum equal to 5% of the excess of such value. If Carnival shall be held liable for the loss of or damage to Guest's baggage or property it is agreed that such liability shall not exceed the lesser of: (1) the actual cash value, or (2) value declared in the manner above provided (up to U.S. $100 if no such declaration has been made). Declared value amounts to be proportionately reduced in any case where less than all of Guest's baggage or property is lost, delayed or rendered unusable due to damage. In no event shall Carnival be liable to pay any compensation if the nature or value of the property has been misrepresented.

(e) No Guest is permitted, to bring on board the vessel live animals (other than qualified service animals, with not less than 14 days advance notice given to Carnival). Guest will be solely responsible for any and all damage and/or loss caused by service animals.

 (f) Weapons, firearms, contraband, ammunition, explosives, incendiary devices, or other dangerous items are strictly prohibited aboard the vessel. Carnival reserves the right to confiscate, destroy and/or turn over to authorities these or any other items it deems in its sole discretion to be detrimental to the safety or comfort of any person or which are otherwise improperly in the possession of any Guest. Each Guest warrants that no such articles are contained in any receptacle or container carried or presented as baggage. Alcoholic beverages are prohibited except as provided for in clause 8(f).  All Guests agree Carnival has, at all times with or without notice, the right to search Guest's baggage and/or personal effects for any of the prohibited items, at any location, to ensure compliance with these restrictions. Any Guest who refuses any such search or screening, or any Guest traveling with such items, may be denied boarding or disembarked and no

refund of the cruise fare will be issued. The Guest will be solely responsible for any and all damage and/or loss caused by his violation of this policy.

## 5. FITNESS TO TRAVEL, SPECIAL NEEDS, PREGNANCY, INFANTS, DRINKING, DISEMBARKATION

(a) The Guest warrants that he and those traveling with him are physically fit to travel at the time of embarkation and is required to notify Carnival in writing at the time of booking the cruise of any physical disability or medical condition which may require special assistance during the voyage. Failure to do so will release Carnival from any liability for loss, damages or other compensation arising from or related in any way to such disability or condition. Upon booking the cruise, guests who have special needs are required to contact Carnival's Special Needs Desk (305-599-2600 ext. 70025) to discuss the details of their special needs. Carnival reserves the right to require that any Guest, who is not self-sufficient, travel with a companion who shall take responsibility for any assistance needed during the voyage and in case of emergency.

(b) Carnival and the Master each reserves the right to refuse passage, disembark or confine to a stateroom any Guest whose physical or mental condition, or behavior would be considered in the sole opinion of the Captain and/or the ship's physician to constitute a risk to the Guest's own well-being or that of any other Guest or crew member. Guest understands and acknowledges that in addition to the limitations on medical care described in Clause 2 (a), prenatal and early infant care, in particular, may require specialized diagnostic facilities and/or treatment that are not obtainable during the cruise on board the ship and/or ashore in ports of call. Therefore, the Guest agrees not to book a cruise or board the ship unless on the day of disembarkation she is pregnant for 24 completed weeks or less, nor for or with infants less than six months old--for trans-ocean crossings, South America and Hawaii the infant must be at least twelve months of age at the time of embarkation to sail. Carnival and the Master reserve the right to disembark any guest whose behavior affects the comfort, enjoyment, safety or well being of other guests or of any crew. All expectant Guests further agree to provide Carnival, prior to embarkation, with a physician's statement verifying that her gestational status is in accordance with this policy, and certifying her fitness to travel even if she will be less than twenty-four completed weeks pregnant upon disembarkation. Failure to do so shall result in the cancellation of the Guest's reservation without refund, compensation or payment except as set forth in Carnival's cancellation policy described in Clause 6, based on the timing of such cancellation.

(c) When traveling with a minor and both parents/legal guardians are not cruising, we strongly recommend bringing an original signed letter from the absent parent/guardian authorizing the minor to travel with you. This will expedite processing by the Department of Homeland Security. Please note that a letter to this effect is required if debarking with children in Mexico.

## 6. CANCELLATION BY GUEST, REFUNDS

Reservations will be held until 30 minutes prior to departure. No refunds will be made in the event of "no shows", unused tickets, lost tickets, interruptions, partially used tickets, cancellations received late or after the start of the cruise, or for Pack & Go program purchases. Carnival strongly recommends the purchase of trip cancellation insurance from your travel agent. Cancellation charges for individual bookings will be assessed as listed below. For cancellation charges related to group bookings, partial ship charters or full ship charters refer to your charter contract or group

booking agreement for terms and conditions.

|  | DAYS PRIOR TO DEPARTURE DATE | CANCELLATION CHARGE(per guest) |
|---|---|---|
| 2,3,4 & 5 day cruises | Up to 61 days | None(except Cruises to Nowhere and Early Saver Fares*) |
|  | 60 to 46 days | Deposit** |
|  | 45 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
|  | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
|  | 14 days or less | 100% of Total Fare |
| 6 day or longer cruises (including Alaska and Hawaii) | Up to 76 days | None (except for Early Saver Fares*) |
|  | 75 to 46 days | Deposit |
|  | 45 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
|  | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
|  | 14 days or less | 100% of Total Fare |
| Europe Cruises & Panama Canal Cruises 7,9, & 12 day | Up to 91 days | None (except for Early Saver Fares*) |
|  | 90 to 56 days | Deposit |
|  | 55 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
|  | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
|  | 14 days or less | 100% of Total Fare |
| All cruises purchased under the Pack & Go program | Any time after booking | 100% of Total Fare |

Total Fare is defined as Cruise Fare, Air Fare Supplement, Transfer Services and Pre/Post Cruise Vacation Packages.
*The deposit is non refundable
**For cruises-to-nowhere, the cancellation charge is 25% of Total Fare.

**7. CARNIVAL'S RIGHT TO INCREASE FARES, CANCEL OR CHANGE VOYAGE, CHANGE STATEROOM ASSIGNMENTS:**
(a) Carnival reserves the right to increase published fares and air fare supplements without prior notice. However, fully paid or deposited guests will be protected, except for fares listed, quoted, advertised or booked in error, fuel supplements, government taxes, other surcharges and changes to deposit, payment and cancellation terms/conditions, which are subject to change without notice. In the event that a cruise fare listed, quoted or advertised through any website, Carnival sales person, travel agent or any other source is booked but is incorrect due to an electronic error, typographical error, human error or any other error causing the fare to be listed, quoted or advertised for an amount not intended by Carnival, Carnival reserves the right to correct the

erroneous fare by requesting the Guest to pay the correct fare intended, or by canceling the cruise in exchange for a full refund, but in no event shall Carnival be obligated to honor any such booking resulting from the error or otherwise be liable in such circumstances.

(b) Carnival has the right without previous notice to cancel this contract at the port of embarkation or any time during the voyage and shall thereupon return to the Guest, if the Contract is completely canceled, his passage money, or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, Carnival shall have no further liability for damages or compensation of any kind.

(c) The Vessel shall be entitled to leave and enter ports with or without pilots or tugs, to tow and assist other vessels in any circumstances, to return to or enter any port at the Master's discretion and for any purpose, and to deviate in any direction or for any purpose from the direct or usual course, and to omit or change any or all port calls, arrival or departure times, with or without notice, for any reason whatsoever, including but not limited to safety, security, adverse weather, strikes, tides, hostilities, civil unrest, port closings, emergency debarkations of Guests or crew, late air, sea, car or motor coach departures or arrivals, mechanical breakdowns, US or foreign governmental advisories or travel warnings, all such deviations being considered as forming part of and included in the proposed voyage. Carnival shall have no liability for any compensation or other damages in such circumstances other than as provided by Carnival's change of itinerary policy at the time Guest or his agent acknowledges receipt and acceptance of the terms and conditions of the cruise ticket contract. Carnival's change of itinerary policy can be found at www.carnival.com.

(d) If the performance of the proposed voyage is hindered or prevented (or in the opinion of Carnival or the Master is likely to be hindered or prevented) by war, hostilities, blockage, ice, labor conflicts, strikes on board or ashore, restraint of Princes, Rulers or People, seizure under legal process, breakdown of the Vessel, congestion, docking difficulties or any other cause whatsoever or if Carnival or the Master considers that for any reason whatsoever, proceeding to, attempting to enter, or entering or remaining at the port of Guest's destination may expose the Vessel to risk or loss or damage or be likely to delay her, the Guest and his baggage may be landed at the port of embarkation or at any port or place at which the Vessel may call, at which time the responsibility of Carnival shall cease and this contract shall be deemed to have been fully performed, or if the Guest has not embarked, Carnival may cancel the proposed voyage without liability to refund passage money or fares paid in advance.

(e) Carnival and the Master shall have liberty to comply with any orders, recommendations or directions whatsoever given by the Government or Department of any nation or by any person acting or purporting to act with the authority of such Government or Department or by any Committee or person having under the terms of the War Risks Insurance on the Vessel the right to give such orders, recommendations or directions, and if by reason of, and in compliance with any such orders, recommendations or directions anything is done or is not done the same shall not be deemed a deviation or a breach of this contract. Disembarkation of any Guest or discharge of baggage in accordance with such orders, recommendations or directions shall constitute due and proper fulfillment of the obligation of Carnival under this Contract.

(f) Specific stateroom assignments are not guaranteed. Carnival reserves the right to move Guests to a comparable stateroom for any reason, including but not limited to, instances in which a stateroom is booked with fewer than the maximum number of Guests the stateroom can accommodate; or when a partial Guest cancellation occurs and the remaining number of Guests do not match the maximum number of Guests the stateroom can accommodate.

## 8. **COMPLIANCE WITH RULES, SOLICITATION, SMOKING, DRINKING, ILLEGAL ACTIVITY, SEARCHES**

(a) Guest agrees during the course of the voyage to follow the directions of the ship's Master, or his authorized officer. Guest further agrees not to solicit anyone on the vessel for any commercial or professional purposes. Guest agrees that any violation of this Clause may subject guest to disembarkation.

(b) Guest acknowledges that Carnival's vessels contain non-smoking sections. Guest agrees to refrain from smoking in those sections and agrees that Carnival has the right to disembark the Guest for failure to observe Carnival's non-smoking policy.

(c) Carnival has designated the Spa stateroom and suite accommodations as <u>an entirely smoke free environment.</u> Guest booked in a Spa cabin agrees to strictly comply with this non-smoking policy and refrain from smoking or allowing any other Guests from smoking in the Spa cabin. Guest further acknowledges and agrees that any violation of this policy shall, in the sole discretion of Carnival, constitute a material breach of this cruise contract. In the event of such breach, Guest forfeits all rights hereunder, including the right to occupy the Spa Cabin and remain on board. Carnival reserves the right to move the Guest(s) to a non-Spa cabin or to disembark the Guest(s), at any port, as determined by Carnival. Carnival shall not be liable for any refund or other compensation or damages whatsoever to any Guest vacated from the Spa Cabin or disembarked pursuant to this provision, or who disembarks because another Guest is so disembarked, and all such Guests forfeit all rights under Carnival's "Vacation Guarantee." Guest and Carnival further agree that any violation of the non-smoking policy would also cause Carnival to incur damages, including but not limited to, loss of Guest goodwill, revenue, cleaning, maintenance and/or other costs. Guest and Carnival expressly acknowledge the difficulty of ascertaining the amount of such damages, and therefore agree that a reasonable estimate of the damages for any violation of the non-smoking policy is $250. Guest authorizes a charge in this amount as liquidated damages, as well as repatriation expenses (including airfare) against Guest's on board charge account, without further notice, for any violation of the non-smoking policy.

(d) Guest agrees, in all ports of call, to return to the Vessel not less than 30 minutes before the scheduled departure time. Guest further acknowledges that shipboard and shore side clocks may have different times, but it is Guest's responsibility to return to the vessel so as not to miss vessel's departure. Any costs associated with transporting Guest to rejoin the vessel including, but not limited to, governmental fees, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees shall be for the account of Guest.

(e) Carnival has a "zero tolerance" policy toward any illegal activity or behavior by Guests or crew aboard. Guest agrees to comply with this policy and further acknowledges that it is Carnival's policy to report incidents of illegal activity or behavior to the appropriate law enforcement

authorities.

(f) Except as noted below, Guests are prohibited from bringing alcohol on Carnival's vessels for on board consumption. However, at the beginning of the cruise during embarkation day only, guests 21 years and older may bring one bottle of wine or champagne per person on board only in their carry-on luggage.   A $10 corkage fee per bottle will be charged should guests wish to consume this wine/champagne in the dining room, or a $14 corkage fee per bottle if consumed in the Supper Club. All alcohol, additional quantities of wine/champagne and excessive non-alcoholic beverages will be confiscated and discarded without compensation.   Alcoholic beverages purchased in the vessel's gift shops or at a port of call will be retained by Carnival until the end of the voyage. Carnival reserves the right to refuse to serve alcohol to any passenger. Guest acknowledges that the minimum age permitted for the purchase, possession or consumption of alcoholic beverages aboard Carnival's vessels is twenty-one (21). Guest agrees to supervise all persons under age twenty-one (21) under Guest's charge to insure that they do not violate this, or any other, shipboard regulation. Guests who attempt to purchase alcohol by using false identification or the Sail & Sign card of a Guest who is twenty-one or older will be deemed in violation of this policy. Any Guest twenty-one or older who attempts to or purchases alcohol for any guest under twenty-one will also be deemed in violation of this policy. Guest agrees that Carnival has the right to disembark any guest who violates this policy and as well as any adults traveling with minors who violate this policy or any other shipboard regulation.

(g) All Guests agree Carnival has, at all times with or without notice, the right to enter and search Guest's stateroom, personal safe or storage spaces, or to search or screen any Guest, and/or personal effects, at any location, to ensure compliance with any of the restrictions set forth in this agreement. Any Guest who refuses any such search or screening may be denied boarding or disembarked and no refund of the cruise fare will be issued.


**9. <u>GUEST'S REIMBURSEMENT FOR FINES, EXPENSES, DEBTS AND DAMAGES</u>**
(a) The Guest shall be liable to and shall reimburse Carnival or the Master for any fines or penalties imposed on Carnival by any government, governmental agency or official, port or port official, for Guest's failure to observe or comply with local requirements in respect of immigration, border patrol, customs and excise, agriculture, health or any other government regulation whatsoever.

(b) The Guest or Guest's estate shall be liable to and shall reimburse Carnival for all deviation expenses (including loss of revenue), damages to the Vessel, its furnishings, operations or equipment, or any property of Carnival caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or any minors traveling with Guest. The Guest or Guest's estate shall defend and indemnify Carnival and the Vessel, their servants and agents against liability which Carnival or the Vessel or such servants or agents may incur towards any person, company or Government for any damage to property, personal injury or death caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or minors traveling with Guest.

(c) Carnival and the Vessel shall have a lien upon all baggage, money and other property whatsoever accompanying the Guest and the right to sell the same by public auction or otherwise

for all sums whatsoever due from the Guest under this Contract and for the costs and expenses of enforcing such lien and such sale.

**10. <u>INDEPENDENT CONTRACTORS, SHORE EXCURSIONS AND OTHER SERVICES</u>**
(a)Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and on board concessions (including but not limited to, the gift shops, spa, beauty salon, fitness center, golf and art programs, video/snorkel concession) are either operated by or are independent contractors. Even though Carnival shall be entitled to collect a fee and earn a profit from the ticketing or sale of such services by such persons or entities, Carnival neither supervises nor controls their actions, nor makes any representation either express or implied as to their suitability. Carnival, in arranging for the services called for by the physician or nurse, all on board concessions, all shore excursion/tour tickets, all pre and post cruise airline flights or other transportation off of the ship and its tenders, does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services. Guests use the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(b) Guest acknowledges that the ship's masseuse, barber, hair dresser, manicurist, fitness or golf instructor, videographer, art auctioneer, gift shop personnel, wedding planners or other providers of personal services are employees of independent contractors and Carnival is not responsible for their actions. Guest further acknowledges that although independent contractors or their employees may use signage or clothing which contains the name "Carnival" or other related trade names or logos, the independent contractor status remains unchanged. Independent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival.

**11. <u>LIMITATIONS OF CARNIVAL'S LIABILITY</u>**
(a) In consideration for the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any persons not employed by Carnival nor for any intentional or negligent acts of Carnival's employees committed while off duty or outside the course and scope of their employment.

(b) In consideration for the fare paid, it is agreed that Carnival shall have no liability as a consequence of guest's use of ship's athletic or recreational equipment or as a consequence of guest's decision to participate in any athletic or recreational activity or event.

(c) On cruises which neither embark, disembark nor call at any U.S. port, Carnival shall be entitled to any and all liability limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as well as the 1976 Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea ("Athens Convention"), which limits Carnival's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately U.S. $60,000 which

fluctuates depending on daily exchange rate as printed in the Wall Street Journal), and all other limits for damage or loss to personal property.

(d) Carnival shall not be liable to the passenger for damages for emotional distress, mental suffering/anguish or psychological injury of any kind under any circumstances, except when such damages were caused by the negligence of Carnival and resulted from the same passenger sustaining actual physical injury, or having been at risk of actual physical injury, or when such damages are held to be intentionally inflicted by Carnival.

(e) In addition to all the restrictions and exemptions from liability provided in this Contract, Carnival shall have the benefit of all statutes of the United States of America providing for limitation and exoneration from liability and the procedures provide thereby, including but not limited Title 46 of the United States Code sections 30501 through 30509, and 30511. Nothing in this Contract is intended to nor shall it operate to limit or deprive Carnival or any such statutory limitation of or exoneration from liability under any applicable laws.

**12. JURISDICTION, VENUE, ARBITRATION AND TIME LIMITS FOR CLAIMS**
(a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(b) Carnival shall not be liable for any claims whatsoever, other than for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 30 days after the Guest is landed from the Vessel or in the case the Voyage is abandoned, within 30 days thereafter. Legal proceedings to recover on any claim whatsoever other than for personal injury, illness or death shall not be maintainable unless commenced within six months after the date Guest is landed from the Vessel or in the case the Voyage is abandoned, within six months thereafter, and unless served upon Carnival within 120 days after commencement.    Guest expressly waives all other potentially applicable state or federal limitation periods for claims which include, but are not limited to, allegations concerning any and all civil rights, the ADA, trade practices and/or advertising

(c) Except as provided in Clause 12 (d) below, it is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

(d) Any and all disputes, claims, or controversies whatsoever, other than for personal injury, illness or death of a Guest, whether brought in personam or in rem or based on contract, tort, statutory, constitutional or other legal rights, including but not limited to alleged violation of civil

rights, discrimination, consumer or privacy laws, or for any losses, damages or expenses, relating to or in any way arising out of or connected with this Contract or Guest's cruise, no matter how described, pleaded or styled, between the Guest and Carnival, with the sole exception of claims brought and litigated in small claims court, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, 9 U.S.C. §§ 202-208 ("the Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., ("FAA") solely in Miami-Dade County, Florida, U.S.A. to the exclusion of any other forum. Guest hereby consents to jurisdiction and waives any venue or other objection that may be available to any such arbitration proceeding in Miami-Dade, Florida. The arbitration shall be administered by National Arbitration and Mediation ("NAM") under its Comprehensive Dispute Resolution Rules and Procedures and the fee schedule in effect at the time of initiating the proceeding with NAM, which are deemed to be incorporated herein by reference. If you have a question about the arbitration process or to obtain a current copy of the Comprehensive Dispute Resolution Rules and Procedures and/or fee schedule, you can contact them at: National Arbitration and Mediation, attention Claims Department, 990 Stewart Street, First Floor, Garden City, NY 11530, telephone number (800) 358-2550.

NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES AND HEREIN, OR OTHERWISE TO LITIGATE THE CLAIM IN ANY COURT (OTHER THAN SMALL CLAIMS COURT). THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT GUEST OR CARNIVAL WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. An award rendered by an arbitrator may be entered in any court having jurisdiction under the Convention or FAA. Carnival and Guest further agree to permit the taking of a deposition under oath of the Guest asserting the claim, or for whose benefit the claim is asserted, in any such arbitration. In the event this provision is deemed unenforceable by an arbitrator or court of competent jurisdiction for any reason, then and only then the provisions of Clause 12 (c) above governing venue and jurisdiction shall exclusively apply to any lawsuit involving claims described in this Clause.

**13. CLASS ACTION WAIVER**
THIS CONTRACT PROVIDES FOR THE EXCLUSIVE RESOLUTION OF DISPUTES THROUGH INDIVIDUAL LEGAL ACTION ON GUEST'S OWN BEHALF INSTEAD OF THROUGH ANY CLASS ACTION. EVEN IF THE APPLICABLE LAW PROVIDES OTHERWISE, GUEST AGREES THAT ANY ARBITRATION OR LAWSUIT AGAINST CARRIER WHATSOEVER SHALL BE LITIGATED BY GUEST INDIVIDUALLY AND NOT AS A MEMBER OF ANY CLASS OR AS PART OF A CLASS ACTION, AND GUEST EXPRESSLY AGREES TO WAIVE ANY LAW ENTITLING GUEST TO PARTICIPATE IN A CLASS ACTION. IF GUEST'S CLAIM IS SUBJECT TO ARBITRATION UNDER CLAUSE 12 (d) ABOVE, THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ARBITRATE CLAIMS ON A CLASS ACTION BASIS. GUEST AGREES THAT THIS SECTION SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE SET FORTH IN SECTION 12 (d) ABOVE, AND IF FOR ANY REASON THIS CLASS ACTION WAIVER IS UNENFORCEABLE AS TO ANY PARTICULAR CLAIM, THEN AND ONLY THEN SUCH CLAIM SHALL NOT BE SUBJECT TO ARBITRATION.

## 14. CARNIVAL'S USE OF GUEST'S LIKENESS

Carnival and/or its promotional partners have the exclusive right to include photographic, video and other visual portrayals of Guest in any medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to Guest, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carnival's sole property, free from any claims by Guest or any person deriving any rights or interest from Guest.

## 15. GUEST'S USE OF PHOTOS, VIDEOS OR RECORDINGS PROHIBITTED

Guest hereby expressly agrees that he/she will not utilize any tape recording, video, or photograph(s) of himself/herself, any other guest, crew, or third party on board the vessel, or depicting the vessel, its design, equipment, or any part thereof whatsoever, for any commercial purpose or in any media broadcast, or for any other non private use, without the express written consent of Carnival. Guest acknowledges that by boarding the vessel, at any time, Guest irrevocably agrees to this provision, which is a condition precedent to being permitted on board the vessel and can be enforced by any legal means, including, but not limited to, injunctive relief.

## 16. GUEST'S OBLIGATIONS FOR EXPENSES OR IF CONFINED, DENIED BOARDING OR DISEMBARKED

(a)  Guest agrees if Carnival incurs any expense or sustains any damage as delineated in but not limited to Clauses 2, 4, 8, 9 and 16, that Carnival may charge Guest's on-board charge account for any expense incurred or damage sustained.

(b)  If guest is denied boarding, confined to a stateroom or disembarked from the vessel pursuant to any provision of this contract, including but not limited to Clauses 2, 4. 5, or 8, guest agrees:
i. Carnival will not be liable for any refund of Cruise Fare, other compensation or any damages.
ii. All rights under Carnival's Vacation Guarantee are forfeited. This forfeiture also applies to any guest who disembarks because another guest is disembarked.
iii. Disembarkation and repatriation to the embarkation port or any other destination will be at guest's sole expense.
iv. To indemnify Carnival and that Carnival may charge Guest's on-board charge account for any and all expenses incurred by Carnival in relation to Guest's disembarkation and/or repatriation.

# IMPORTANT TERMS AND CONDITIONS FOR NON CRUISE PORTIONS OF VACATION PACKAGES PLEASE READ CAREFULLY

1. Please see pages 1 through 11 for the applicable terms and conditions for the cruise portion of Guests vacations. The terms and conditions in paragraphs 1 through 11 herein apply only to Carnival's responsibilities for non cruise portions of vacation packages. Other terms and conditions with respect to air travel, hotel and other non cruise activities may be applied by the entities providing those services.
2. The payment of the required deposit or any partial or full payment for reservation of a land package before or after the cruise shall constitute acceptance and consent to all of the terms and conditions of this Contract and the General Information and Vacation Package Conditions and Restrictions contained in the brochure for such vacation package and/or the brochures and circulars of the suppliers. These provisions are herby incorporated by reference in this Contract and vacation package Guests (hereinafter referred to as Guests) are advised to take note of them.
3. Carnival Cruise Lines, its affiliates, subsidiary companies, agents, servants, and employees (hereinafter referred to as "CARNIVAL") is the principle tour operator and its responsibility to Guests is limited to the arrangement of all tours and accommodations offered in these vacation packages. CARNIVAL shall not be responsible for personal injuries, death, or property damage, economic loss, inconvenience or delay, consequential damages, or change of itinerary or accommodations incurred by any person or Guest which may occur due to acts or omissions or tortious conduct on the part of any direct or supplemental air carrier, hotel or other suppliers of arrangements and services or other independent contractors, their employees, agents or others not under the direct control of CARNIVAL.
4. CARNIVAL reserves the right to decline to accept or to reject any person as a Guest, at any time, or to cancel a vacation package due to circumstances beyond the control of CARNIVAL.
5. CARNIVAL reserves the right to substitute hotels for other hotels in a similar category, to substitute air carriers, and to change schedules without prior notice should circumstances so require.
6. If a change in the itinerary is needed due to factors or conditions beyond CARNIVAL'S control, no refund or credit will be made, however, CARNIVAL will make an effort to provide accommodations and services of a comparable quality and standard as set forth in the brochure. Any such change shall not modify the cancellation provisions in the brochure. No credit will be allowed nor refund given for any services provided in the brochure should any such services not be utilized by Participants.
7. CARNIVAL makes no representations or warranties, implied or otherwise, in regard to the reliability of suppliers or independent contractors, nor does it assume a duty of safety or responsibility for the independent acts of suppliers, independent contractors, their employees or agents.
8. Vacation packages are non-transferable. Fares shall be deemed to be earned when paid and non-refundable unless otherwise expressly stated in the cancellation provisions in the brochure.
9. CARNIVAL shall not be liable for any claims whatsoever other than for personal injury, illness or death, of the Guest unless full particulars thereof in writing are given to

CARNIVAL within 30 days after the Guest shall complete the packages, or in the case that the tour is abandoned, within 30 days thereafter. Suit to recover any claim shall not be maintainable in any event unless commenced within six months after the date of the loss.

10. Carnival shall not be liable for any claims whatsoever for personal injury, or illness or death of the guest unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing.

11. It is agreed by Guest and CARNIVAL that all disputes between Guest and CARNIVAL arising under or in connection with a vacation package shall be litigated, if at all, in and before the United States District Court for the Southern District of Florida in Miami-Dade County, Florida, U.S.A., to the exclusion of the courts of any other state or county.