UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

**MICHAEL BELIK**,

     Plaintiff,

vs.

**CARLSON TRAVEL GROUP, INC.**
d/b/a **SINGLESCRUISE.COM**, *et al.*,

     Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant, Carnival Corporation's ("Carnival['s]") Motion to Dismiss … (the "Motion") [ECF No. 16], filed May 2, 2011. Carnival seeks to dismiss Plaintiff, Michael Belik's ("Belik['s]") Complaint [ECF No. 1] under Federal Rule of Civil Procedure 12(b)(6). The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

In April 2010, Plaintiff, Michael Belik ("Belik"), went on a cruise (the "Cruise") aboard the *Valor*, organized by Defendants, Carlson Travel Group, Inc. d/b/a SinglesCruise.com; Carlson Travel Holdings, Inc.; Travel Leaders Leisure Group, LLC; and Travel Leaders Group LLC (collectively "SinglesCruise Defendants"). (*See* Compl. ¶¶ 9, 18, 20). The SinglesCruise Defendants operate a website with the URL www.SinglesCruise.com, in which they claim to be the "largest singles cruise

---

[1] The allegations of Plaintiff's Complaint are taken as true.

Case No. 11-21136-CIV-ALTONAGA/Simonton

operator in the United States." (*Id.* ¶ 28). During SinglesCruise trips, SinglesCruise Defendants offer certain "exclusive events" put on by "professional cruise directors." (*Id.*). One of the events is the "Cozumel Beach Party excursion" (the "Event"). (*Id.*).

While on the Cruise, on April 9, 2010, Plaintiff attended the Cozumel Beach Party excursion. (*See id.* ¶ 20 ). The Event, which took place at Señor Frog's in Cozumel, Mexico (*see id.* ¶ 20), was advertised as having a "water slide directly into the ocean" and "unlimited drinks for thee and a half solid hours" (*id.* ¶ 28). Patrons were "allowed and encouraged to slide, jump, and dive into the waters below the seawall on and surrounding the Senor Frogs [sic] premises." (*Id.* ¶ 22). Despite this encouragement, there were no warnings regarding the dangers of partaking in these activities, and no warnings regarding the shallow water depth surrounding Señor Frog's. (*See id.* ¶¶ 22, 24). Although shallow, the depth of the water was "not readily apparent." (*Id.* ¶ 23). Rather, the water around Señor Frog's was "deceptive" and appeared "deeper than it actually [was] …." (*Id.*). Even though the water depth was not apparent to Belik, Defendants should have been familiar with the shallow depth. (*See id.* ¶ 24).

Señor Frog's was commonly patronized by cruise-ship passengers. (*See id.* ¶ 25). Often these passengers used a Señor Frog's provided roof-mounted water slide to "propel" themselves into the Caribbean. (*Id.*).

Plaintiff was one of the many SinglesCruise participants who entered the Caribbean while at Señor Frog's. He did not slide in, but instead dove off the seawall surrounding Señor Frog's. (*See id.* ¶ 22). Belik was unaware of the shallowness of the water and when he jumped in, "he struck his head on the shallow bottom and suffered permanent, debilitating, and serious injuries." (*Id.*). He is now a quadriplegic. (*See* Mot. Opp'n 1 [ECF No. 28]).

2

Case No. 11-21136-CIV-ALTONAGA/Simonton

Belik states several claims from breaches of duties allegedly owed to him. The SinglesCruise Defendants handled all aspects of the Cruise and Event. (*See* Compl. ¶ 27). As part of this undertaking, these Defendants represented their "control" over the Event, stating they would "manage the safety and security of these events and provide a safe and high quality event and venue .…" (*Id.*). The SinglesCruise Defendants further "allowed and promoted sliding, jumping, and diving into the water from the seawall …." (*Id.*). In addition to duties they breached, the SinglesCruise Defendants made material misrepresentations about their employees, safety, vendors' quality, and locations. (*See id.* ¶¶ 31–32).

Belik also alleges Carnival owed him a direct duty of care, including the duty to warn of dangers. (*See id.* ¶ 33). Carnival's duties arose by virtue of Carnival's "ongoing contractual and business relationship with the SinglesCruise Defendants." (*Id.* ¶ 34). Carnival "had specific and direct knowledge or constructive knowledge of those excursions, including the Cozumel Beach Party," and also had knowledge of the types of people attending and activities taking place there. (*Id.* ¶ 35). Furthermore, SinglesCruise was an agent of Carnival. (*See id.* ¶ 37).

Plaintiff further alleges that the Señor Frog's Defendants,[2] as the owners or managers of the Señor Frog's restaurant where he was injured, provided a water side and unlimited drinks. (*See id.* ¶ 38). Additionally, they "promote[d] and encourage[d] excessive drinking." (*Id.* ¶ 39). Specifically, these Defendants served "unlimited alcohol," offered the slide into the ocean, and knew "others [were] jumping and diving into the ocean from their seawall." (*Id.* ¶ 40). Despite being

---

[2] For the sake of clarity, the Court identifies the parties as Plaintiff does in his Complaint (for example, the SinglesCruise Defendants). The Court notes, however, that Plaintiff does not clearly define which Defendants encompass the "Señor Frog's Defendants." The term appears to comprise Defendants, Operadora Anderson S.A. de C.V. d/b/a Grupo Anderson's; Palangana S.A. de C.V. ½ Señor Frog's d/b/a Señor Frog's; and Grupo Nogalero, S.A. de C.V. Carlos 'n Charlie's d/b/a Carlos 'n Charlie's.

Case No. 11-21136-CIV-ALTONAGA/Simonton

aware of their drunken patrons, these Defendants offered "no reasonable security, no reasonable warnings, no reasonable barriers or discouragement to jumping or diving in the water, no reasonable control of the service of alcohol, and a lack of reasonable management and lack of warnings of the dangers which are not apparent to any jumper or diver." (*Id.*). As a result, Plaintiff "dove in and suffered serious permanent and debilitating injuries." (*Id.*).

Plaintiff raises multiple claims against Carnival. Plaintiff alleges Carnival was negligent in its policies and procedures, and the SinglesCruise Defendants' negligent acts are imputed to Carnival through agency and other relationships. (*See id.* ¶ 42). Belik alleges Carnival knew of the dangers at the Event because Carnival cruises frequently visit Cozumel and Carnival passengers routinely visit Señor Frog's. (*See id.* ¶¶ 91–92). Moreover, Carnival was aware of the unlimited drinking, as well as the proclivity of people to jump and dive off the seawall. (*See id.* ¶ 92). Plaintiff alleges over 30 different "failures" by Carnival. (*Id.* ¶¶ 93(a)–(ff)).

Plaintiff also alleges Carnival occupied the position of principal to its agents, the SinglesCruise Defendants. (*See id.* ¶ 98). This is demonstrated through the SinglesCruise website, SinglesCruise advertisements, and SinglesCruise representations. (*See id.* ¶¶ 98–99). Belik further points to the SinglesCruise Defendants' representation that they are "a travel company acting as an intermediary or *agent* for … cruise lines." (*Id.* ¶ 99 (emphasis added) (ellipses in original)). He also states Carnival controlled the SinglesCruise Defendants through its ability to terminate the relationship, and its ability to require SinglesCruise to abide by its rules and regulations. (*See id.* ¶ 100). Belik then lists over 30 different failures by the SinglesCruise Defendants (*see id.* ¶¶ 102(a)–(ff)), and alleges Carnival is responsible and liable for those failures by virtue of the agency relationship (*see id.* ¶ 105).

4

Case No. 11-21136-CIV-ALTONAGA/Simonton

In addition to actual agency, Belik alleges the SinglesCruise Defendants were Carnival's agents either by estoppel or through apparent agency. (*See id.* ¶¶ 107–10). As a result of the agency relationship, Carnival is allegedly liable as the principal for the over 30 failures perpetrated by the SinglesCruise Defendants. (*See id.* ¶¶ 112(a)–(ff), 114–15).

Plaintiff further alleges he is a third-party beneficiary of a contract between Carnival and the SinglesCruise Defendants. (*See id.* ¶ 117). Certain provisions of the contract concern the safety of Carnival's passengers. (*See id.* ¶¶ 119–20). Señor Frog's "is excessively dangerous," especially in light of the copious amounts of alcohol consumed. (*Id.* ¶ 121). Carnival's breach of the third-party contract — by not providing a safe venue and destination for Carnival passengers — caused Plaintiff's injuries. (*See id.* ¶¶ 122–26).

Finally, Plaintiff alleges Carnival and the SinglesCruise Defendants were in a joint venture. (*See id.* ¶ 130). The joint venture was to provide passengers with the Event at Señor Frog's. (*See id.* ¶ 131). As a result of the venture, Carnival is allegedly liable for the actions of the SinglesCruise Defendants. (*See id.* ¶ 132).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When reviewing a motion to dismiss, a court

must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III. ANALYSIS

Carnival raises several arguments as to why it is not liable and why the case against it should be dismissed. Each argument is addressed in turn.

#### a. Negligence[4]

Carnival asserts it was not negligent in failing to warn Plaintiff of the dangers inherent in jumping off a seawall into the ocean because it owed Plaintiff no duty to do so. (*See* Mot. 4–9; Reply 1–2 [ECF No. 34]). Contrary to Carnival's characterization of his claim, Plaintiff states he is suing Carnival for its "direct negligence in failing to warn" of the dangers of a "three and a half hour unlimited drinks party." (Mot. Opp'n 3, 5; Compl. ¶ 92). Plaintiff is thus alleging more than the mere failure to warn of the dangers of jumping off a seawall into waters of unknown depth.

To properly plead a negligence claim, a plaintiff must allege four elements: "(1) a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury." *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). The negligence claim is predicated on a laundry list of duties Carnival allegedly owed Plaintiff. (*See* Compl. ¶¶ 93(a)–(ff)). The duties include the failure to control activities at the Event, failure to

---

[4] Although titled "Failure to Warn of Known Dangers," it is apparent that Belik alleges Carnival breached multiple duties besides the duty to warn. (*See* Compl. ¶¶ 93–94). The Complaint acknowledges this. (*See id.* ¶ 94 ("As a result of Carnival's failure to warn and *other failures* ...." (emphasis added)).

Case No. 11-21136-CIV-ALTONAGA/Simonton

provide a safe excursion (i.e., the Event), failure to force Señor Frog's to institute certain safety measures, failure to fully understand the extent of the Event, failure to live up to representations made by the SinglesCruise Defendants, and failure to warn of the dangers at the Event. (*See id.*).

Carnival asserts that while it owed Plaintiff a duty to use reasonable care under certain circumstances, it was not an absolute insurer of his safety while on the cruise and it did not owe Plaintiff a heightened duty of care. (*See* Mot. 6; Reply 1–2 [ECF No. 34]). And while Carnival concedes it owes a duty to warn of dangers when it has actual or constructive notice of the danger, it does not owe a duty to warn of open and obvious dangers. (*See* Mot. 6 (citing *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)).

1. *The Dangers Were Not Open and Obvious as a Matter of Law.*

Carnival maintains that the dangers involved in jumping or diving into shallow water, or water of an indeterminate depth, are sufficiently open and obvious so as not to trigger a duty to warn. (*See* Mot. 6). Generally, a defendant only has a duty to warn of dangers that are not open and obvious. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) (quoting *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 (S.D. Fla.1986)). Plaintiff alleges he was encouraged to jump off the seawall. (*See id.* ¶ 22). It was not an unreasonable assumption by Plaintiff, if encouraged by the proprietor to jump into water of indeterminate depth, that the water was deep enough to dive safely. This creates a fact question of whether the danger was open and obvious.

Plaintiff also alleges Carnival failed to warn him of additional dangers besides the danger of diving into shallow water. (*See* Compl. ¶ 93). Plaintiff alleges the Event itself was dangerous, and one of the ways that danger manifested itself was through encouraging patrons to dive into the water.

7

Case No. 11-21136-CIV-ALTONAGA/Simonton

(*See id.* ¶ 93(v)).

Contrary to Carnival's contention, depending on the *facts* of the case, it could be negligent for failing to warn a passenger not to dive into certain waters. *See First Arlington Inv. Corp. v. McGuire*, 311 So. 2d 146, 151 (Fla. 2d DCA 1975). The court in *First Arlington* determined that the trial court was correct in allowing the question of whether the defendants were negligent for failing to warn the plaintiff not to dive off a pier:

> From the circumstances shown by this record it was for the jury's determination as to whether or not the appellants' [sic] were negligent for their failure to warn appellee not to use the pier for a purpose (diving) other than the admittedly intended purpose. It was also within the province of the jury to determine whether the proximate cause of appellee's injuries was his own negligence or carelessness.

*Id.*

Finally, even if the danger was open and obvious, this is not a total bar to recovery. *See Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 938 (Fla. 1991). "[E]ven when a person engaging in a noncontact sport such as diving knows of an open and obvious danger, the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven." *Id.* The Court cannot say as a matter of law that the danger was so open and obvious as to obviate Carnival's duty to warn.

2. *Belik Sufficiently Pleads a Negligence Claim.*

Plaintiff alleges that Carnival "*knew* of the dangers inherent in the SinglesCruise Defendants [sic] Cozumel Beach Party at Senor Frogs [sic] in Cozumel, Mexico." (Compl. ¶ 91 (emphasis added)). The Complaint then provides further factual support for Belik's contention that Carnival knew of the dangers. (*See id.* ¶¶ 91–92). Further, whether or not Belik was invited by Carnival to

8

Case No. 11-21136-CIV-ALTONAGA/Simonton

Señor Frog's, he alleges that Señor Frog's is a place Carnival passengers are expected to visit. (*See id.* ¶ 91). The duty to warn extends to places passengers are expected to visit. *See Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985) ("[T]he duty to warn is limited to dangers known to exist in the particular place where the passenger is invited to, or reasonably may be expected to visit."). It is also a fact question as to whether Carnival had actual or constructive notice of the danger. (*Compare* Mot. 6 *with* Compl. ¶ 91).

In attempting to demonstrate that it did not owe Mr. Belik a duty to warn, Carnival almost uniformly cites cases addressing summary judgment motions. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006); *Dyer v. Carnival Cruise Lines, Inc.*, No. Civ. A. No. 84-4103-MA, 1987 WL 34091, at *1 (D. Mass. Dec. 30, 1987); *Sharpnack v. Hoffinger Indus., Inc.*, 479 S.E.2d 435, 437 (Ga. Ct. App. 1996) (affirming summary judgment); *Hughes v. Roarin 20's, Inc.*, 455 So. 2d 422, 423 (Fla.2d DCA 1984) (affirming summary judgment). The Court must take the factual allegations in the Complaint as true. Depending on the record developed, Carnival's arguments may be better raised on summary judgment. *See Bridgewater*, 2011 WL 817936, at *1–2, n.3 (finding that Carnival's arguments for dismissal of a negligence claim predicated on a failure to warn about dangers of an off-cruise excursion were more appropriate for summary judgment. Carnival's arguments included "(1) the extent of a cruise ship's duty; and (2) the effect of an exculpatory clause in Plaintiff's Passenger Ticket."); *Goldbach v. NCL (Bahamas) Ltd.*, No. 06-21248-CIV-HUCK/SIMONTON, 2006 WL 3780705, at *2 (S.D. Fla. Dec. 20, 2006) ("The question of whether Defendant knew or should have known of the danger posed by Szumowski's performance is a genuine issue of material fact precluding summary judgment.").

Case No. 11-21136-CIV-ALTONAGA/Simonton

### b. Actual Agency

Carnival next asserts the SinglesCruise Defendants were not its agents, as is demonstrated by the Carnival ticket contract. (*See* Mot. 9–11). Further, Carnival maintains that SinglesCruise's representation that it is an agent for cruise lines "does not legally transform SinglesCruise.com into Carnival's actual agent." (*Id.* 11). Carnival states it never expressly acknowledged SinglesCruise was its agent, and a "mere failure to deny an agency relationship cannot, as a matter of law, support a claim for agency." (*Id.* (citation omitted)).

"The elements of an actual agency relationship are '(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.'" *Matienzo v. Mirage Yacht, LLC*, No. 10-22024-CIV, 2011 WL 1375684, at *2 (S.D. Fla. Apr. 12, 2011) (quoting *Kaloe Shipping Co. Ltd. v. Goltens Serv. Co.*, No. 06-22186~CIV, 2011 WL 677372, at *4 (S.D. Fla. Feb. 16, 2011)). Carnival challenges Plaintiff's actual-agency allegation, asserting the first element — acknowledgment by the principal — is lacking. (*See* Mot. 9–11).

Concerning the first element, acknowledgment by the principal, Plaintiff alleges Carnival "acknowledged that SinglesCruise acted for it through the fact that Carnival allowed SinglesCruise to supply passengers for Carnival ships on Carnival Cruises" (Compl. ¶ 98); "knew or should have known that SinglesCruise was representing that SinglesCruise provided the Carnival passengers with a cruise, that is that SinglesCruise was a cruise operator" (*id.*); and "knew or should have known that SinglesCruise was representing that SinglesCruise acted as an agent of Carnival" (*id.*). Plaintiff further alleges actual agency was "evidenced" through the ongoing relationship between Carnival and the SinglesCruise Defendants, and through SinglesCruise's advertising and representations. (*Id.*

10

¶¶ 98–99). Finally, Belik alleges there was an agency relationship as "evidenced" by oral and written agreements and contracts. (*Id.*).

Carnival, however, points to its ticket contract, which states, "Any travel agent or sales agent utilized by the Guest in connection with the Booking of the cruise or this contract *is solely the agent of the Guest and not Carnival*." (Mot. 10 (emphasis in original) (quoting Mot. Ex. A ¶ 3)). Although the ticket is not attached to the Complaint, Carnival asserts it may be considered because "Plaintiff incorporated the passenger ticket by reference …." (*Id.* 2). Carnival does not, however, cite to where Plaintiff incorporates the ticket by reference.

While Plaintiff refers to the ticket contract (*see* Compl. ¶ 9), he does not *rely* on the contract for any of his claims. In order to consider outside documents provided by Carnival, the documents must be "central to the plaintiff's claim;" otherwise upon their consideration, the Motion must be converted to a motion for summary judgment. *Brooks*, 116 F.3d at 1369 (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Wajnstat v. Oceania Cruises, Inc.*, No. 09-21850-Civ, 2011 WL 465340, at *4 n.2 (S.D. Fla. Feb. 4, 2011) ("The passenger ticket contract is not outside of the pleadings because the complaint specifically refers to the document, in paragraph four, and *because the contract is central to the Plaintiff's claims*." (emphasis added)).

The ticket contract is not central to Plaintiff's claims. Plaintiff neither alleges a breach of the ticket contract nor relies on the contract in any way. Indeed, Plaintiff focuses a majority of his arguments (in his actual- and apparent-agency claims) on the actions of the agent (SinglesCruise) and not the principal (Carnival). (*See* Compl. ¶¶ 97–115). This further evidences the Carnival ticket contract is not central to Plaintiff's claims, and consequently it may not be considered in resolving the Motion

Although generally the question of whether an agency relationship exists is a factual question, *see Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003), "when a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented is so unequivocal that reasonable persons could reach but one conclusion, a court may determine the lack of agency as a matter of law." *Pardo v. Tanning Research Labs., Inc.*, 996 F. Supp. 1222, 1225 (M.D. Fla. 1998).

Here, there are factual allegations of Carnival's acknowledgment that SinglesCruise would act for it. Plaintiff alleges there were verbal communications and agreements, as well as written communications and a contract. (*See* Compl. ¶ 98). Plaintiff "does not have a copy of this written contract or these communications; the Defendants do have copies …." (*Id.*). Pleading on information in belief is still permissible where, as here, the facts are "peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Taking the allegations as true, Carnival authorized SinglesCruise to act on its behalf.

    **c. Apparent Agency and Agency by Estoppel**

In addition to asserting SinglesCruise was Carnival's actual agent, Plaintiff contends an agency relationship was created through apparent agency or agency by estoppel. (*See* Compl. ¶¶ 106–10). Carnival argues that no apparent agency relationship exists because *it* never held out that SinglesCruise was its agent; Plaintiff only alleges SinglesCruise held itself out as Carnival's agent. (*See* Mot. 12–13).

    **1.** *Apparent Agency*

To properly plead a claim of apparent agency, a plaintiff must allege three elements: "(1) the alleged principal made a manifestation which caused a third party to believe that an alleged agent

Case No. 11-21136-CIV-ALTONAGA/Simonton

had authority to act for the benefit of the principal; (2) such a belief was reasonable; and (3) the claimant reasonably relied upon that belief to his or her detriment." *Bridgewater*, 2011 WL 817936, at *2 (citing *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005)). An apparent agency relationship may be created by silence where "the principal knowingly permits the agent to act as if the agent is authorized," or by "'acting in a manner which creates a reasonable appearance of an agent's authority ….'" *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 (11th Cir. 2003) (quoting *Ja Dan, Inc. v. L-J Inc.*, 898 F. Supp. 894, 900 (S.D. Fla. 1995)); *but see Koens v. Royal Caribbean Cruises, Ltd.*, Nos. 10–24371–CV, 10–24373–CV, 2011 WL 1197642, at *5 (S.D. Fla. Mar. 25, 2011) ("As a matter of law, Defendant RCL's failure to deny an agency relationship as Plaintiffs allege cannot support a claim for agency."); *Bridgewater*, 2011 WL 817936, at *2 ("As a matter of law, a plaintiff cannot satisfy the requirement of pleading positive manifestations by an alleged principal as to an agent's authority simply by stating that the principal did not disavow an agency relationship.").

Plaintiff asserts that Carnival's silence in the face of SinglesCruise acting in a manner that created a reasonable appearance of SinglesCruise's authority served as Carnival's manifestation. (*See* Compl. ¶¶ 107–09; Mot. Opp'n 15–16). SinglesCruise stated it was an agent for cruise lines. (*See* Compl. ¶ 107 (citing Compl. Ex. C [ECF No. 1-3])). Carnival allegedly knew of this agency representation and allowed SinglesCruise to continue to represent itself as such. (*See id.* ¶ 108). Thus, the requisite manifestation by Carnival is satisfied and Plaintiff states a claim because Carnival "knew" of SinglesCruise's representation and allowed SinglesCruise to hold itself out as Carnival's agent. (*Id.* ¶¶ 107–09).

13

Case No. 11-21136-CIV-ALTONAGA/Simonton

### 2. *Agency by Estoppel*

In Florida, agency by estoppel is nearly the same as apparent agency. The Eleventh Circuit does not even consider the two separately. *See Whetstone Candy*, 351 F.3d at 1078 n.15 ("Whetstone also argues that the doctrine of agency by estoppel applies. That doctrine, however, is so similar to apparent authority that there is no significant difference between them. Consequently, we do not consider agency by estoppel separately ...." (internal citation and quotation marks omitted)). "Under Florida law, agency by estoppel, i.e. apparent authority, embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo-Panameno, S. A.*, 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted). Plaintiff relied on the "representations made by SinglesCruise with the knowledge and consent of Carnival," and changed his position in reliance and to his detriment. (Compl. ¶ 110). The claim is sufficient.

### d. Breach of Third-Party Beneficiary Contract

Plaintiff alleges he was the intended beneficiary of a contract[5] between Carnival and the SinglesCruise Defendants. (*See id.* ¶¶ 117–28). Carnival maintains that Plaintiff has not alleged the contract "has a 'clear and manifest intent' to 'primarily and directly benefit' Plaintiff." (Mot. 14). According to Carnival, at most, Plaintiff received an incidental or consequential benefit from the contract, and thus, as a matter of law, he is not a third-party beneficiary. (*See id.*).

To properly plead a claim for breach of a third-party beneficiary contract, a plaintiff must allege:

---

[5] The contract between Carnival and SinglesCruise has not been supplied.

14

> (1) the existence of a contract in which plaintiff is not a party, (2) "an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit" the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach.

*Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1243-44 (S.D. Fla. 2010) (citation omitted). "A third party must establish that the contract either expressly creates rights for them as a third party or that the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006). The third parties do not need to be specifically mentioned by name so "long as the contract refers to a 'well defined class of readily identifiable persons' that it intends to benefit." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.*, 215 F.3d 1217, 1222 (11th Cir. 2000) (quoting *Generali v. D'Amico*, 766 F.2d 485, 490 (11th Cir. 1985)). The party's status as a third-party beneficiary "may be established by pre-contract and post-contract actions of the parties." *Fla. Power & Light Co. v. Mid-Valley, Inc.*, 763 F.2d 1316, 1321 (11th Cir. 1985) (citing *Goodell v. K.T. Enters., Ltd.*, 394 So. 2d 1087 (Fla. 1st DCA 1981)). Both contracting parties must intend to benefit third parties; it is insufficient if only one party unilaterally intends to benefit some third party. *See Fla. Power & Light Co. v. Rd. Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006) (quoting *Caretta Trucking*, 647 So. 2d at 1031).

Carnival challenges this claim on the basis that the intent element is lacking. (*See* Mot. 14). The question of intent, however, is an issue more appropriate for summary judgment. *See Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1003 (11th Cir. 2004) (deciding, on summary judgment, whether plaintiff had shown "either (a) the contract itself or (b) both contracting parties primarily and directly intended to provide a benefit to [plaintiff]"). Plaintiff has generally alleged

an intent to benefit him as a member of the class of "passengers" (*see* Compl. ¶ 119), which is all that is required under Rule 9(b), *see* FED. R. CIV. P. 9(b) ("intent … may be alleged generally.").

Carnival disputes Plaintiff's claim that intent may be generally alleged, relying on *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). (*See* Reply 8). The Eleventh Circuit in *Bochese* stated that an "intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third party beneficiary with a legally enforceable right." *Bochese*, 405 F.3d at 982 (emphasis omitted). Carnival asserts Belik may not generally allege intent. (*See* Reply 7–8).

Carnival is mixing two concepts. Plaintiff may generally allege intent, but the intent alleged must then be specific. The Complaint generally alleges a specific intent to benefit Carnival's passengers — a class in which Belik was a member. (*See* Compl. ¶ 119).

### e. Joint Venture

Finally, Plaintiff alleges that Carnival entered into a joint venture with the SinglesCruise Defendants. (*See* Compl. ¶¶ 130–35). The purpose of this venture was to provide SinglesCruise and Carnival passengers "a Cozumel Party at Senor Frogs [sic]." (*Id.* ¶ 131). As a result of this joint venture, Carnival is liable for the actions and negligence of SinglesCruise. (*Id.* ¶ 132). Carnival, however, complains that Plaintiff fails to allege any facts in support of its claim that Carnival was involved in a joint venture. (*See* Mot. 15–16).

To properly allege a joint venture, a plaintiff must set forth the following five elements: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained." *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.

Case No. 11-21136-CIV-ALTONAGA/Simonton

Supp. 2d 1351, 1357 (S.D. Fla. 2009) (citing *Austin v. Duval County Sch. Bd.*, 657 So. 2d 945, 948 (Fla. 1st DCA 1995)); *see also Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002) ("Florida courts have interpreted these [joint venture] requirements to preclude a finding that a partnership or joint venture exists where any factor is missing.").

Carnival asserts there are no allegations that "either party had joint control or right of control, that there was any joint proprietary interests in Cozumel Beach Party, or that either of the parties had the right to share in the profits and a duty to share in the losses." (Mot. 16). The undersigned agrees. The Complaint simply alleges in conclusory fashion that a joint venture existed; there is no factual support demonstrating the above-cited five elements. (*See* Compl. ¶¶ 130–35). This is insufficient under *Iqbal* and *Twombly*.

Although Plaintiff essentially concedes this claim fails, he requests discovery to establish the claim. (*See* Mot. Opp'n 18). The Eleventh Circuit has repeatedly instructed that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim . . . , should . . . be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (footnote call number omitted). Plaintiff's attempt to reverse the logical sequence in litigation – claim first, discovery later – is unavailing.

### IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint **[ECF No. 16]** is **GRANTED in part** and **DENIED in part**.

Case No. 11-21136-CIV-ALTONAGA/Simonton

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of June, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record