## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 11-21136-CIV-ALTONAGA/Simonton

**MICHAEL BELIK**,

    Plaintiff,

vs.

**CARLSON TRAVEL GROUP, INC.**
d/b/a **SINGLESCRUISE.COM**, *et al.*,

    Defendants.

_____/

### ORDER

**THIS CAUSE** came before the Court on Defendants, Operadora Anderson's, S.A. de C.V. ("Operadora") and Palangana, S.A. de C.V.'s ("Palangana['s]") (sometimes collectively referred to as the "Señor Frog's Defendants[']") Combined Motion to Dismiss the Plaintiff's Complaint Pursuant to the *Forum Non Conveniens* Doctrine and Operadora's Motion to Dismiss for Lack of Personal Jurisdiction[1] (the "Operadora/Palangana Motion" or the "Motion") [ECF No. 103], filed November 7, 2011. These Defendants move to dismiss the Complaint based on the doctrine of *forum non conveniens*. They argue: (1) United States maritime law does not apply to Plaintiff's claims against them; and (2) Mexico would be a more appropriate venue for the litigation against them. The SinglesCruise Defendants[2] filed a Notice of Joinder . . . [ECF Nos. 105, 106] on November 16, 2011, relying upon the memorandum and affidavits filed in support of the Operadora/Palangana Motion.

---

[1] On March 16, 2012 [ECF No. 193] Defendant Operadora withdrew its defense of lack of personal jurisdiction.

[2] The SinglesCruise Defendants consist of Travel Leaders Group, LLC, and Travel Leaders Leisure Group, LLC.

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

After taking jurisdictional discovery, Plaintiff, Michael Belik ("Belik" or "Plaintiff"), filed his Response [ECF No. 195] on May 21, 2012. Thereafter, Defendants engaged in additional jurisdictional discovery, and recently submitted their Replies [ECF Nos. 219, 220, 221] on September 5, 2012. The Court has carefully reviewed the parties' written submissions and applicable law.

## I. BACKGROUND

Plaintiff Belik is a New York resident who took a cruise upon Carnival Cruise Lines' ("Carnival['s]") ship *Valor* in April 2010. Belik purchased his ticket for the cruise from Carnival's agents, the SinglesCruise Defendants, which contract with Carnival to funnel passengers to Carnival. The SinglesCruise Defendants marketed and sold to Belik a port-of-call excursion in Cozumel, Mexico known as the "Cozumel Beach Party!". The event was held at the ½ Señor Frogs Restaurant in the port of Cozumel within sight of the *Valor*. The "Cozumel Beach Party!" was promoted to occur at the ½ Señor Frog's Restaurant, complete with a rooftop waterslide directly into the ocean, with "plenty of music and drinks to keep us partying the day away!" (Belik Aff., Ex. G [ECF No. 195-1]). Belik maintains Carnival and the SinglesCruise Defendants knew the passengers attending the "Cozumel Beach Party!" would be drinking and partying, and would be encouraged to slide, jump, and dive into the waters from a seawall adjacent to the ½ Señor Frog's Restaurant. On April 9, 2010, Belik dove into the water from the seawall on numerous occasions, and on his final dive, hit his head on the ocean floor, resulting in tetraplegia.

The accident occurred in Cozumel, Quintana Roo, Mexico, at the Cozumel International Cruise Terminal ("CICT"). The property in and around the CICT, including the surrounding waters and adjacent submerged lands, is owned by the United Mexican States. The temporary

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

use of the property was governed by concession agreements entered into between the Mexican government and government-controlled companies like Administración Portuaria Integral de Quintana Roo, S.A. de C.V.. At the time of Belik's accident, the CICT was operated and/or controlled by SSA, S.A. de C.V. ("SSA").

Operadora holds an exclusive license to use, exploit, sub-license and sub-franchise the brand names "Señor Frog's" and "Carlos And Charlies." On October 15, 2001, Operadora entered into a franchise agreement with Palangana that permitted Palangana to use the "Señor Frog's" brand name. In December 2001, Palangana commenced its operation of the Señor Frog's Bar and Restaurant in downtown Cozumel. Thereafter, on March 1, 2002, Palangana commenced its operation of the ½ Señor Frog's Restaurant within the CICT. The ½ Señor Frog's Restaurant operated within an area of the CICT known as "Local 33." Palangana obtained the right to occupy "Local 33" under a March 2, 2002 agreement with Distribuidora Cuahtémoc Moctezuma de Cozumel, S.A. de C.V. ("DCM"), a Mexican beer distributor. DCM obtained its right to sublease Local 33 pursuant to an agreement with TMM Puertos Y Terminales, S.A. de C.V. ("TMM"). TMM was the Mexican corporation that once served as the operator of the CICT before SSA.

Under its March 1, 2002 agreement with DCM, Palangana was permitted to promote and advertise within certain areas of the CICT, including the area called the Beach Club. The Beach Club is a common area located within the CICT, used as a common area for all persons allowed to be present in the CICT.

The seawall Belik dove from was in the CICT, and Belik maintains that seawall was controlled or managed by Operadora and Palangana. These Defendants, however, insist they did not control and/or manage the seawall around the perimeter of the Beach Club from which Belik

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

dove. Rather, they assert the Mexican government owned the seawall, and it was controlled and/or managed by SSA. After Hurricane Wilma, SSA rebuilt the Beach Club, including the addition of the seawall located around the perimeter of the Beach Club from which Belik dove. After the seawall was added, SSA used it as a revenue source by charging local Mexican water sports concessionaires a tariff to transport customers. SSA utilized security guards to monitor and invoice local Mexican water sports concessionaires' use of the seawall. SSA also controlled and limited access to the CICT property to authorized individuals.

On August 1, 2008, Palangana entered into a Temporary and Partial Use Agreement with SSA for the right to use an area within the CICT called "Local 36." The seawall was not a part of the August 1, 2008 Agreement between Palangana and SSA for "Local 36."

In October 2008, Palangana purchased a waterslide from CE Diseño Y Construcción, S.A. de C.V. ("Diseño"), a Mexican corporation. The waterslide, manufactured by Fibrart, S.A. de C.V., a Mexican corporation, was installed by Diseño. To obtain permission from SSA to use the waterslide, Palangana was required to confirm to SSA that Palangana would be responsible for damages the waterslide might cause to the seawall.

Plaintiff's Complaint alleges several claims from breaches of duties allegedly owed to him by several Defendants. The Complaint names the following Defendants: Carlson Travel Group, Inc. d/b/a SinglesCruise.com; Travel Leaders Leisure Group, LLC; Travel Leaders Group, LLC; Carlson Travel Holdings, Inc.;[3] Carnival Corporation d/b/a/ Carnival Cruise Line; Operadora Anderson S.A. de C.V. d/b/a Grupo Andersons; Palangana S.A. de C.V. ½ Señor Frogs d/b/a Señor Frogs; Grupo Nogalero, S.A. de C.V. Carlos N Charlies d/b/a Carlos N

---

[3] Belik has dismissed Defendant Carlson Travel Holdings, Inc. (*See* [ECF No. 38]).

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

Charlies.[4]

According to the Complaint, the SinglesCruise Defendants handled all aspects of the cruise and "Cozumel Beach Party!," and represented they would "manage the safety and security of these events and provide a safe and high quality event and venue." (Compl. ¶ 27 [ECF No. 1]). Carnival owed Belik a duty of care, including the duty to warn of dangers. (*See id.* ¶ 33). The Señor Frog's Defendants — which presently comprise Operadora and Palangana — as owners or managers of the ½ Señor Frog's Restaurant where Belik was injured, provided the waterslide and unlimited drinks, and failed to provide security, warnings, or discouragement to jumping or diving into the water. (*See id.* ¶¶ 38, 40).

With regard to the SinglesCruise Defendants, in Count I Belik alleges they were negligent in providing security and managing the "Cozumel Beach Party!". In Count II Belik seeks to hold the SinglesCruise Defendants liable under a theory of negligent misrepresentation involving risk of physical harm, relying on the Restatement Second of Torts § 311. Count III states a claim of vicarious or agency liability against the SinglesCruise Defendants, alleging these Defendants were the principal in an agency relationship with the Señor Frog's Defendants. In Count IV Belik states a claim of breach of contract as an intended third party beneficiary of the SinglesCruise Defendants' contract with the Señor Frog's Defendants. Count V alleges the SinglesCruise Defendants and the Señor Frog's Defendants entered into a joint venture, and as a result of that relationship, the SinglesCruise Defendants are liable for the negligence of the Señor Frog's Defendants.

Belik raises multiple claims of negligence against Carnival. In Count VI Belik alleges

---

[4] Defendant, "Grupo Nogalero, S.A. de C.V. Carlos N Charlies d/b/a Carlos N Charlies," was dismissed by Order dated December 29, 2011 [ECF No. 114] due to Plaintiff's failure to timely serve the Defendant.

Carnival failed to warn him of the known dangers surrounding the "Cozumel Beach Party!". In Count VII, Belik alleges Carnival is the principal to its agent, the SinglesCruise Defendants, exercised control over them, and is responsible for their negligence. Count VIII is entitled "Agency by Estoppel or Apparent Agency – Carnival," and again seeks to hold Carnival responsible for the SinglesCruise Defendants' negligence. Count IX is a claim for breach of contract as a third party beneficiary of Carnival's contract with the SinglesCruise Defendants. Count X alleges the existence of a joint venture between Carnival and the SinglesCruise Defendants.

Count XI states a claim of negligence against the Señor Frog's Defendants. Count XII states a claim of breach of contract as a third-party beneficiary of any contract existing between the Señor Frog's Defendants and the SinglesCruise Defendants.

## II.  LEGAL STANDARD

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). The plaintiff must show that venue in the chosen forum is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citations omitted). For its part, the defendant invoking *forum non conveniens* "bears the heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 69 (11th Cir. 2009). Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000), it "must draw all reasonable

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

### III. ANALYSIS

It is well established that a case shall not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable. *See Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir. 1983) ("'[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal.'" (quoting *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315 (5th Cir. 1980)) (emphasis removed)); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004) (noting the Supreme Court suggests in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004), that for a court to apply admiralty law, it must first have admiralty jurisdiction). Thus, there are two threshold matters the Court must address in its *forum non conveniens* analysis: (1) whether admiralty jurisdiction exists, and if so, (2) whether United States maritime law applies to this case.

**A. Admiralty Jurisdiction**

Although the Motion does not raise any issue with the Court's admiralty jurisdiction, the Replies in opposition to Plaintiff's Response filed by the Señor Frog's Defendants and the SinglesCruise Defendants do. (*See* Operadora Reply 9 (asserting there is no admiralty jurisdiction over Belik's claims against Operadora); Palangana Reply 2 ("Plaintiff's assertion of subject matter jurisdiction over Palangana is based solely upon diversity."); SinglesCruise Defendants Reply 6 (asserting there is no admiralty jurisdiction over Operadora and Palangana). In any event, the Court "ha[s] an independent duty to ensure admiralty jurisdiction exists before applying admiralty law." *Celebrity Cruises*, 394 F.3d at 900 (citing *Norfolk*, 543 U.S. at 23;

7

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)).

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with marine activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).[5] Given that Operadora suggests that maritime law may apply to Carnival (*see* Operadora Reply 10), and that neither the Señor Frog's Defendants nor the SinglesCruise Defendants challenge the Court's admiralty jurisdiction over Carnival, the Court begins its jurisdictional analysis with respect to Carnival.

The Eleventh Circuit has held that a cruise ship's obligations to its passengers "extend literally beyond the gangplank," even to common law torts against cruise ship passengers, such as sexual assault, that occur on land. *Celebrity Cruises*, 394 F.3d at 902; *see, e.g.*, *id.* at 900–02 (finding admiralty jurisdiction existed where a ship's passenger was assaulted by a crew member at a port-of-call). Further, courts have typically found that injuries suffered by cruise ship passengers while on shore excursions are sufficient to satisfy the *Grubart* test and invoke admiralty jurisdiction. *See, e.g.*, *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV-ALTONAGA/Brown, 2009 WL 8659594, at *4 (S.D. Fla. Sept. 14, 2009) (cases cited).

Not only does the present case concern a shore excursion, it is also factually analogous to the circumstances in *Celebrity Cruises*. There, the court observed that the ship was scheduled to stop in Hamilton, Bermuda, the port-of-call where the sexual assault took place. Additionally,

---

[5] The *Grubart* location and connection test requires that the following conditions exist for there to be admiralty jurisdiction: (1) "the tort occurred on navigable water or [the] injury suffered on land was caused by a vessel on navigable water"; (2) "the incident has a potentially disruptive impact on maritime commerce"; and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional marine activity." *Grubart*, 513 U.S. at 534 (internal quotation marks and citations omitted).

the ship remained clearly visible from the bar where crew and passengers were known to routinely socialize, as well as from the immediate vicinity of the public park where the sexual assault occurred. *See Celebrity Cruises*, 394 F.3d at 901. Here, Plaintiff was a passenger aboard Carnival's ship, the *Valor*. The ship's stop in Cozumel was a scheduled port-of-call, and Plaintiff alleges Carnival knew that passengers from its ship "regularly patronize SENOR FROGS . . . and slid[e], jump[], and div[e] from the slide or seawall" at issue, which was "within sight of the [*Valor*]." (Compl. ¶¶ 25–26). Plaintiff, as a participant in the "Cozumel Beach Party!" shore excursion that was organized by one of Carnival's agents, dove off of the seawall and hit his head on the ocean floor.

  Plaintiff plainly satisfies the location inquiry because this case concerns a cruise ship's obligations to its passengers with regard to shore excursions and because Plaintiff's injury occurred in the ocean. The two remaining inquiries with respect to the incident's connection with maritime commerce and activity are also met. As to the first issue, when a passenger is injured on a shore excursion, it has the potential to impact the number of excursions purchased by passengers, thereby affecting maritime commerce. *See Balaschak*, 2009 WL 8659594, at *4 ("The cruise line industry is maritime commerce. . . . Shore excursions attract passengers to participate in cruises and are an integral part of the cruise-line industry." (internal quotation marks and citations omitted)). With respect to the second issue, the general character of the activity giving rise to the incident here is, among other things, Carnival's alleged negligence in failing to warn its passengers of the dangers of jumping or diving off of the seawall, when it knew its passengers routinely visited the seawall while the ship was in port through a shore excursion routinely offered to many of its passengers. Carnival's alleged breach is substantially related to a traditional maritime activity. For the foregoing reasons, Plaintiff appropriately

invokes admiralty jurisdiction in its action against Carnival.

With regard to the remaining defendants, the Court notes that if it has admiralty jurisdiction with respect to a particular defendant, it has admiralty jurisdiction over an entire case, even when non-maritime claims — which arise from the same operative facts, as is the case here — are brought in the same suit.[6] *See Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1296–97 (2d Cir. 1990) ("[A]dmiralty jurisdiction extends to an entire case, including non-admiralty claims against a second defendant." (citing *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989); *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 822–23 (1824))); *see also Ortega v. Schramm*, 922 F.2d 684, 693 n.9 (11th Cir. 1991) (recognizing that pendent party jurisdiction is allowed in admiralty cases under the language of 28 U.S.C. section 1333(1)[7] (citing *id.* at 1295–97)). Thus, even if Plaintiff's claims against the Señor Frog's Defendants are not maritime claims, the Court properly has admiralty jurisdiction over these defendants. For these reasons, the Court finds that it maintains admiralty jurisdiction over this matter.

**B. Choice of Law**

The Señor Frog's Defendants challenge Plaintiff's assertion that the entire case is governed by maritime law, instead contending that Mexican law is applicable. Because the SinglesCruise Defendants did not submit their own memorandum addressing the *forum non conveniens* issues briefed by the parties, the Court has no meaningful analysis of whether

---

[6] Notably, Operadora, too, acknowledges that "admiralty jurisdiction [can] be exercised over . . . non-admiralty claim[s]." (Operadora Reply 8 (citations omitted)).

[7] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil *case* of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1) (emphasis added).

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

maritime law governs Belik's claims against the SinglesCruise Defendants. The mere joinder in the Operadora/Palangana Motion was insufficient to preserve any such objection on the part of the SinglesCruise Defendants given the material differences between those Defendants and the claims asserted against them as compared to the activities of Operadora/Palangana and Plaintiff's claims against those Mexican Defendants. Accordingly, in the choice of law analysis that follows, the Court only addresses the arguments and authorities relevant to the issues briefed in the Operadora/Palangana Motion and the parties' memoranda and supporting documents.

The Supreme Court has set out several factors to determine when courts should apply the maritime law of the United States, including the Jones Act and the Death on the High Seas Act. *See Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–10 (1970); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381–84 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 582–93 (1953). *Lauritzen* identified seven relevant factors: (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum. *See* 345 U.S. at 582–93. The final *Lauritzen* factor, law of the forum, "is entitled to little weight because 'fortuitous circumstances . . . often determine the forum.'" *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985) (quoting *Lauritzen*, 345 U.S. at 590–91) (alteration in original). In addition, courts must also consider whether the defendant has a base of operations in the United States. *See Rhoditis*, 398 U.S. at 309. These factors are not an exhaustive list, and the test is not a mechanical one. *See Szumlicz*, 698 F.2d at 1195 (citing *Rhoditis*, 306 U.S. at 308–09).

The Eleventh Circuit has made clear that "when confronted with making a choice between applying federal maritime law and the law of a foreign country," courts are to examine the *Lauritzen* and *Rhoditis* non-exhaustive list of factors. *Cooper v. Meridian Yachts, Ltd.*, 575

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

F.3d 1151, 1174 (11th Cir. 2009).  Regrettably, however, the parties utterly fail to engage in the kind of rigorous analysis set forth in *Cooper* despite acknowledging other principles held in that case.  (*See, e.g.*, Resp. 9 (citing *Cooper*, 575 F.3d 1151, 1176)); Operadora Reply 10 (citing *Cooper*, 575 F.3d 1151, 1173 n.13); Palangana Reply 7 (citing *Cooper*, 575 F.3d 1151, 1173 n.13)).  For example, the court noted that a "complete choice of law analysis requires that [a court] examine the base of operations of all parties," and that only factors relevant to the claim be considered.  *Cooper*, 575 F.3d at 1176; *see id.* at 1175.  Here, Palangana does not analyze any of the factors, and instead conclusorily states that "[t]here are absolutely no facts compelling the application of maritime law under a *Lauritzen / Rhoditis* analysis."  (Palangana Reply 4). Similarly, Operadora does not consider any of the *Lauritzen* and *Rhoditis* factors, but concludes in a blanketed fashion: "[E]ven if this Honorable Court were to apply the *"Rhoditis/Lauritzen"*[] factors herein, the result would be the same given the present record—that Mexican law applies to BELIK's premises liability claims against OPERADORA."  (Operadora Reply 3 n.2). Certainly, it is not incumbent upon the Court to undertake the requisite analysis when it is the movants' burden to demonstrate why the Southern District of Florida is an inappropriate forum. Lastly, although they apply the *Lauritzen* and *Rhoditis* factors to Plaintiff's claims against Operadora and Palangana, the SinglesCruise Defendants march through the eight factors with little to no analysis.[8]  (*See* SinglesCruise Defs.' Reply 8–9).  Notably, Plaintiff's *Lauritzen/Rhoditis* analysis is also quite cursory.  (*See* Resp. 8–9).

---

[8] Moreover, the SinglesCruise Defendants fail to explain why they are entitled to join in the Señor Frog's Defendants' Motion to Dismiss on *forum non conveniens* grounds when "Mr. Belik's ticket contract with Carnival requires suit to be filed in [the Southern District of Florida], and that ticket contract is incorporated into the contract between Carnival and SinglesCruise."  (Resp. 34).

CASE NO. 11-21136-CIV-ALTONAGA/Simonton

Because of these deficiencies, Defendants fail to satisfy their "heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 430. A choice of law analysis employing the *Lauritzen* and *Rhoditis* factors, as instructed in *Cooper*, is critical to the Court's determination whether it may dismiss this case for *forum non conveniens*.

### IV. CONCLUSION

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 103]** is **DENIED**. Should Defendants choose to re-file a motion to dismiss based on *forum non conveniens*, they must at a minimum address the issues noted in this Order.

**DONE AND ORDERED** in Miami, Florida, this 1st day of October, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record