UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21136-CIV-ALTONAGA/Torres

MICHAEL BELIK,

       Plaintiff,

vs.

CARLSON TRAVEL GROUP, INC.
d/b/a SINGLESCRUISE.COM, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Operadora Anderson's, S.A. de C.V. ("Operadora") and Palangana, S.A. de C.V.'s ("Palangana['s]") (sometimes collectively referred to as the "Señor Frog's Defendants[']") Renewed Combined Motion to Dismiss the Plaintiff's Complaint Pursuant to the *Forum Non Conveniens* Doctrine ("Motion") [ECF No. 247], filed on October 23, 2012. Upon the parties' request and notice of a mutually convenient date and time, the Court heard oral argument on the Motion on December 20, 2012. (*See* [ECF Nos. 255, 269]). The Court has carefully reviewed the parties' written submissions, oral arguments, and applicable law.

## I. BACKGROUND[1]

Plaintiff Michael Belik ("Plaintiff" or "Belik") is a New York resident who took a cruise upon Carnival Cruise Lines' ("Carnival['s]") ship *Valor* (the "Vessel") in April 2010. Belik purchased his ticket for the cruise from Carnival's purported agents, the SinglesCruise

---

[1] Much of the background is taken from the Court's October 1, 2012 Order denying the Señor Frog's Defendants initial Motion to Dismiss on *forum non conveniens* grounds. (*See* [ECF No. 236]). Other relevant facts are addressed in the Analysis rather than in the Background section.

Case No. 11-21136-CIV-ALTONAGA/Torres

Defendants,[2] which contract with Carnival to funnel passengers to Carnival.  The SinglesCruise Defendants created and marketed to Belik a port-of-call excursion in Cozumel, Mexico known as the "Cozumel Beach Party!".  While Belik was aboard the *Valor*, the SinglesCruise Defendants sold Belik a ticket for the excursion.[3]  The event was held at the ½ Señor Frogs Restaurant in the port of Cozumel within sight of the *Valor*.  The Cozumel Beach Party! was promoted to occur at the ½ Señor Frog's Restaurant, complete with a rooftop waterslide directly into the ocean, with "plenty of music and drinks to keep us partying the day away!".  (Resp. Ex. D [ECF No. 252-4]).  Belik maintains Carnival and the SinglesCruise Defendants knew the passengers attending the Cozumel Beach Party! would be drinking and partying, and would be encouraged to slide, jump, and dive into the waters from a seawall adjacent to the ½ Señor Frog's Restaurant.  On April 9, 2010, Belik dove into the water from the seawall on numerous occasions, and on his final dive, hit his head on the ocean floor, resulting in tetraplegia.

The accident occurred in Cozumel, Quintana Roo, Mexico, at the Cozumel International Cruise Terminal ("CICT").  The property in and around the CICT, including the surrounding waters and adjacent submerged lands, is owned by the United Mexican States.  The temporary use of the property was governed by concession agreements entered into between the Mexican government and government-controlled companies such as Administración Portuaria Integral de Quintana Roo, S.A. de C.V.  At the time of Belik's accident, the CICT was operated and/or controlled by SSA, S.A. de C.V. ("SSA").

---

[2]  The SinglesCruise Defendants consist of Travel Leaders Group, LLC, and Travel Leaders Leisure Group, LLC.

[3]  The parties stipulated at the December 20 hearing that Belik purchased his Cozumel Beach Party! ticket aboard the *Valor* while the ship was docked in Mexico.

Case No. 11-21136-CIV-ALTONAGA/Torres

Operadora holds an exclusive license to use, exploit, sub-license, and sub-franchise the brand names "Señor Frog's" and "Carlos And Charlies."  On October 15, 2001, Operadora entered into a franchise agreement with Palangana that permitted Palangana to use the "Señor Frog's" brand name.  In December 2001, Palangana commenced its operation of the Señor Frog's Bar and Restaurant in downtown Cozumel.  Thereafter, on March 1, 2002, Palangana commenced its operation of the ½ Señor Frog's Restaurant within the CICT.  The ½ Señor Frog's Restaurant operated within an area of the CICT known as "Local 33."  Palangana obtained the right to occupy "Local 33" under a March 2, 2002 agreement with Distribuidora Cuahtémoc Moctezuma de Cozumel, S.A. de C.V. ("DCM"), a Mexican beer distributor.  DCM obtained its right to sublease Local 33 pursuant to an agreement with TMM Puertos Y Terminales, S.A. de C.V. ("TMM").  TMM was the Mexican corporation that once served as the operator of the CICT before SSA.

Under its March 1, 2002 agreement with DCM, Palangana was permitted to promote and advertise within certain areas of the CICT, including the area called the Beach Club.  The Beach Club is a common area located within the CICT, used as a common area for all persons allowed to be present in the CICT.

The seawall Belik dove from was in the CICT, and Belik maintains that seawall was controlled or managed by Operadora and Palangana. These Defendants, however, insist they did not control and/or manage the seawall around the perimeter of the Beach Club from which Belik dove.  Rather, they assert the Mexican government owned the seawall, and it was controlled and/or managed by SSA.  After Hurricane Wilma, SSA rebuilt the Beach Club, including the addition of the seawall located around the perimeter of the Beach Club from which Belik dove. After the seawall was added, SSA used it as a revenue source by charging local Mexican water

3

Case No. 11-21136-CIV-ALTONAGA/Torres

sports concessionaires a tariff to transport customers.  SSA utilized security guards to monitor and invoice local Mexican water sports concessionaires' use of the seawall.  SSA also controlled and limited access to the CICT property to authorized individuals.

On August 1, 2008, Palangana entered into a Temporary and Partial Use Agreement with SSA for the right to use an area within the CICT called "Local 36," which is a one-story structure with a rooftop terrace.  The seawall was not a part of the August 1, 2008 Agreement between Palangana and SSA for "Local 36."  In October 2008, Palangana purchased a waterslide.  The waterslide was mounted to the seawall, with the top of the slide located at the rooftop of "Local 36."

Plaintiff's Complaint alleges several claims for breaches of duties allegedly owed to him by various Defendants.  The Complaint names the following Defendants: Carlson Travel Group, Inc. d/b/a SinglesCruise.com; Travel Leaders Leisure Group, LLC; Travel Leaders Group, LLC; Carlson Travel Holdings, Inc.;[4] Carnival Corporation d/b/a/ Carnival Cruise Line; Operadora Anderson S.A. de C.V. d/b/a Grupo Andersons; Palangana S.A. de C.V. ½ Señor Frogs d/b/a Señor Frogs; Grupo Nogalero, S.A. de C.V. Carlos N Charlies d/b/a Carlos N Charlies.[5]

According to the Complaint, the SinglesCruise Defendants handled all aspects of the cruise and Cozumel Beach Party! excursion, and represented they would "manage the safety and security of these events and provide a safe and high quality event and venue."  (Compl. ¶ 27 [ECF No. 1]).  Carnival owed Belik a duty of care, including the duty to warn of dangers.  (*See*

---

[4] Belik has dismissed Defendant Carlson Travel Holdings, Inc.  (*See* [ECF No. 38]).

[5] Defendant, "Grupo Nogalero, S.A. de C.V. Carlos N Charlies d/b/a Carlos N Charlies," was dismissed without prejudice by Order dated December 29, 2011 [ECF No. 114] due to Plaintiff's failure to timely serve the Defendant.

Case No. 11-21136-CIV-ALTONAGA/Torres

*id.* ¶ 33).  The Señor Frog's Defendants   —   which presently comprise Operadora and Palangana   —   as owners or managers of the ½  Señor Frog's Restaurant where Belik was injured, provided the waterslide and unlimited drinks, and failed to provide security, warnings, or discouragement to jumping or diving into the water.  (*See id.* ¶¶ 38, 40).

With regard to the SinglesCruise Defendants, in Count I Belik alleges they were negligent in providing security and managing the Cozumel Beach Party! event.  In Count II Belik seeks to hold the SinglesCruise Defendants liable under a theory of negligent misrepresentation involving risk of physical harm, relying on the Restatement Second of Torts section 311.  Count III states a claim of vicarious or agency liability against the SinglesCruise Defendants, alleging these Defendants were the principals in an agency relationship with the Señor Frog's Defendants. In Count IV Belik states a claim of breach of contract as an intended third party beneficiary of the SinglesCruise Defendants' contract with the Señor Frog's Defendants.  Count V alleges the SinglesCruise Defendants and the Señor Frog's Defendants entered into a joint venture, and as a result of that relationship, the SinglesCruise Defendants are liable for the negligence of the Señor Frog's Defendants.

Belik raises multiple claims of negligence against Carnival.  In Count VI Belik alleges Carnival failed to warn him of the known dangers surrounding the Cozumel Beach Party! excursion.  In Count VII, Belik alleges Carnival is the principal to its agent, the SinglesCruise Defendants, exercised control over them, and is responsible for their negligence.  Count VIII is entitled "Agency by Estoppel or Apparent Agency – Carnival," and again seeks to hold Carnival responsible for the SinglesCruise Defendants' negligence.  Count IX is a claim for breach of contract as a third party beneficiary of Carnival's contract with the SinglesCruise Defendants. Count X alleges the existence of a joint venture between Carnival and the SinglesCruise

Case No. 11-21136-CIV-ALTONAGA/Torres

Defendants.

Count XI states a claim of negligence against the Señor Frog's Defendants. Count XII states a claim of breach of contract as a third-party beneficiary of any contract existing between the Señor Frog's Defendants and the SinglesCruise Defendants.

## II. LEGAL STANDARD

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). The plaintiff must show that venue in the chosen forum is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citations omitted). For its part, the defendant invoking *forum non conveniens* "bears the heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 69 (11th Cir. 2009). Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

## III. ANALYSIS

It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable.[6] *See Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir. 1983)

---

[6] The Señor Frog's Defendants assert this tenet applies only in cases where plaintiffs are seamen. However, they provide no supporting case law explaining why such a distinction should be drawn

Case No. 11-21136-CIV-ALTONAGA/Torres

("'[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal.'" (quoting *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315 (5th Cir. 1980)) (emphasis removed)); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004) (noting the Supreme Court suggests in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004), that for a court to apply admiralty law, it must first have admiralty jurisdiction).

The Court previously determined it had admiralty jurisdiction over the entire case. (*See* Order dated Oct. 1, 2012, at 7–10 [ECF No. 236]). The Señor Frog's Defendants disagree with that decision and instead assert that "admiralty jurisdiction does not exist over the Plaintiff's claims against them."[7] (Mot. 7 n.6). Nonetheless, the Señor Frog's Defendants have not filed a separate motion for reconsideration of the October 1 Order, and they admit the jurisdictional issue is not discussed in their Motion. (*See id.*). Thus, for the purposes of the present Motion, the Court does not revisit the question of whether admiralty jurisdiction exists over each of Plaintiff's claims in this case, including those raised by Belik against the Señor Frog's Defendants.

Therefore, the threshold issue the Court must address in its *forum non conveniens*

---

between plaintiffs who are seamen and those who are not. In any event, this point of law has been followed by courts in cruise passenger actions. *See, e.g.*, *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1348 (S.D. Fla. 2008). Accordingly, the Court does not address this argument further.

[7]   The Senor Frog's Defendants also insist Plaintiff "assert[s] subject matter jurisdiction over the Defendants . . . based solely upon diversity." (Mot. 13). The Senor Frog's Defendants provide no citation to the record to support their characterization of the Complaint. Moreover, the Senor Frog's Defendants are mistaken — the Complaint asserts jurisdiction arises both in admiralty and due to diversity of citizenship. (*See* Compl. ¶ 2).

Case No. 11-21136-CIV-ALTONAGA/Torres

analysis is whether United States maritime law should apply to the Senor Frog's Defendants.[8]

## A.  Choice of Law

"Generally, when a plaintiff's claims support admiralty jurisdiction, the court will apply federal admiralty law."  *Smith*, 584 F. Supp. 2d at 1348 (citing *Doe*, 394 F.3d at 902; *Everhart v. Royal Caribbean Cruises Ltd.*, No. 07-23098, 2008 WL 717795, at \*2 (S.D. Fla. Mar. 17, 2008)).  "Establishing admiralty jurisdiction, however, does not foreclose the possibility of applying foreign law in place of U.S. admiralty law."  *Id.*  The Supreme Court has set out several factors to determine when courts should apply the maritime law of the United States.  *See Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–10 (1970); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381–84 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 582–93 (1953).  *Lauritzen* identified seven relevant factors: the (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum.  *See* 345 U.S. at 582–93.  In addition, courts must also consider whether the defendant has a base of operations in the United States.  *See Rhoditis*, 398 U.S. at 309.  These eight factors are not an exhaustive list, and the test is not a mechanical one.  *See Szumlicz*, 698 F.2d at 1195 (citing *Rhoditis*, 306 U.S. at 308–09).

---

[8]  At the December 20, 2012 hearing, the Court asked the parties whether *Szumlicz* stood for the proposition that the Court should decline to dismiss a case — where only some defendants are governed by United States maritime law — on *forum non conveniens* grounds when the motion to dismiss is filed by other defendants to whom the Court would not apply United States law.  Although the parties did not provide the Court with a direct answer or caselaw supporting their respective positions, it is of no consequence to the Court's analysis.  The question does not pose a hurdle to resolution of the Motion, as, for the following reasons, the Court finds United States maritime law applies to the Senor Frog's Defendants, and further finds that the traditional *forum non conveniens* factors weigh in favor of retaining the case in this District.

### 1.  Whether a "Complete" Choice of Law Analysis Requires the Court to Consider the *Rhoditis*/*Lauritzen* Factors with Respect to Non-Señor Frog's Defendants

The Eleventh Circuit has made clear that "when confronted with making a choice between applying federal maritime law and the law of a foreign country," courts are to examine the *Lauritzen* and *Rhoditis* non-exhaustive list of factors.  *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1174 (11th Cir. 2009).  A "complete choice of law analysis requires that [a court] examine the base of operations of all parties," and that only factors relevant to the claim be considered.  *Id.*, 575 F.3d at 1176; *see id.* at 1175.

Despite the clear language in *Cooper*, the Señor Frog's Defendants urge the Court to ignore an analysis involving all other Defendants, and instead examine each of the *Rhoditis*/*Lauritzen* factors only with respect to them.  They argue that such an analysis is appropriate for three reasons.  First, although *Cooper*'s express language calls for an examination of each party's base of operations, the Eleventh Circuit did not include an examination of the named plaintiff — the hurt seaman, Jameson Cooper — and therefore the Court need not include the non-Señor Frog's Defendants in its base of operations analysis.  Second, were the Court to sever the Señor Frog's Defendants from the matter, they would then be the only defendants in their case, thus simplifying the Court's inquiry.  And third, if the Court applied all of the factors to all of the parties in order to determine what law to apply to Plaintiff's claims against the Señor Frog's Defendants, the doctrine of depeçage would be rendered a nullity.

These arguments fail to persuade.  The Señor Frog's Defendants provide no law supporting their interpretation of the Eleventh Circuit's clear instructions in *Cooper*.  Moreover, the Court notes that in drawing their conclusion, the Señor Frog's Defendants ignore several

Case No. 11-21136-CIV-ALTONAGA/Torres

pertinent procedural facts in *Cooper*.  In that case, Cooper, a seaman, sought recovery from four defendants after the ship's foodlift landed on his leg: the owner of the ship; the ship itself, *in rem*; his employer; and the ship's manager ("the Ship Defendants").  The Ship Defendants filed a third-party complaint against the shipbuilder, the designer of the ship, and their American affiliate ("the Builder Defendants"), claiming the Builder Defendants breached a duty owed to Cooper, thereby making the Builder Defendants liable to the Ship Defendants for indemnity, contribution, and equitable subrogation. Cooper then settled his action with the Ship Defendants, extinguishing his claims, leaving only the third-party claims against the Builder Defendants.  In this light, Cooper was a not a party to the litigation when the court was faced with the choice of law question with respect to the third-party claims.  The Señor Frog's Defendants offer no explanation why the Eleventh Circuit's decision in *Cooper* to exclude a non-party from its examination of the base of operations factor requires the Court to similarly exclude the non-Señor Frog's Defendants, when claims remain pending against them.

As to their second argument, the Señor Frog's Defendants have not filed a motion to sever despite their repeated suggestions during oral argument that the Court assume Belik's action against them would proceed in a separate trial before considering the base of operations of "all parties," as instructed in *Cooper*.  Thus, in sum, although the Señor Frog's Defendants do not ask for severance, they urge the Court to frame its understanding of *Cooper*'s instructions assuming the parties *can* be severed.  However, for such an argument to persuade, the Señor Frog's Defendants would first have to demonstrate that their severance is warranted — after all, the Court's consideration as to whether separate trials are advisable is a condition precedent to examining the base of operations of only the Señor Frog's Defendants.  A review of the record shows that no such demonstration has been made.

10

Case No. 11-21136-CIV-ALTONAGA/Torres

Lastly, the Court observes that the Señor Frog's Defendants correctly characterize the doctrine of depeçage, under which "different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ." *Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir. 1985); *see Cooper*, 575 F.3d at 1173 n.13 ("It may seem anomalous that federal maritime law may have governed Cooper's personal injury action while Dutch law governs certain third-party claims that are based on that action, but such an outcome is explicitly recognized by the conflict of laws doctrine of *depecage*.") (citing *id.*). However, the Señor Frog's Defendants misapprehend the extent to which the Court must involve non-Señor Frog's Defendants in its choice of law analysis, and therefore their conjecture that depeçage would be rendered a nullity if non-Señor Frog's Defendants are considered when evaluating the *Rhoditis*/*Lauritzen* factors misses the mark.

According to *Cooper*, each party's base of operations is to be examined by the Court. *See id.* at 1176. With respect to the application of the *Lauritzen* factors to other parties, the Court will consider the factors so long as they pertain to the at-issue claims. For example, in *Cooper*, the Eleventh Circuit declined to consider the place where Cooper contracted for his employment with his employer in its choice of law analysis because the court found that fact to have "no relevance to the policy of permitting an action for contribution or indemnity." *Id.* at 1175 n.14. Similarly, here, if a particular factor as applied to a particular party has "no relevance" to a policy of adjudicating the at-issue claims in this forum, it will not be considered. *See, e.g.*, *infra* Part III.A.2.c. Thus, because the Court's choice of law analysis is necessarily unique with respect to various claims, it does not run afoul of the doctrine of depeçage.

For the foregoing reasons, the Court concludes that a complete choice of law analysis, as explained in *Cooper*, necessitates an analysis of the base of operations of all of the Defendants

11

Case No. 11-21136-CIV-ALTONAGA/Torres

— Carnival, the SinglesCruise Defendants, and the Señor Frog's Defendants — as well as consideration of all factors as applied to all parties that are relevant to a policy of adjudicating Counts XI and XII in this forum.

### 2. Analysis of the *Rhoditis/Lauritzen* Factors[9]

#### a. Place of the Wrongful Act

Belik's claims against the Señor Frog's Defendants sound in negligence and contract.  In the negligence claim, Count XI, Belik asserts the Señor Frog's Defendants had a

> duty to provide a reasonably safe place for its patrons . . . including the SINGLESCRUISE Defendants['] cruise line passengers as in this case.  SENOR FROGS owes those passengers including the Plaintiff herein a duty to provide a [sic] reasonably safe premises in which to hold a party; reasonable and safe bar restaurant entertainment area; and reasonable and safe event itself, that is, the Cozumel Beach Party.

(Compl. ¶ 139).  Belik alleges the Señor Frog's Defendants breached that duty of care in a number of ways, including the

> [f]ailure to require that the venue, the cruise line, or the organizer of the event provide reasonable and adequate alcohol service policies and practices; employee training; management systems; and risk assessment to assess the risks where a large group of young, single people drinking alcohol in large amounts are allowed and encouraged to jump and dive from a seawall into the ocean with various degrees of shallowness.

(*Id.* ¶ 140(g)).

Count XII is titled "Breach of Third Party Beneficiary Contract — Senor Frogs Defendants and SinglesCruise Defendants."  (Compl. 117).  In it, Belik alleges that the Señor Frog's Defendants and the SinglesCruise Defendants entered into a written agreement, the

---

[9]  The *Valor* sailed under a Panamanian flag of convenience.  (*See* Resp. 4).  Thus, the "law of the flag" factor points neither to Mexican nor United States law and is not relevant to the Court's analysis.  *See, e.g.*, *Cooper*, 575 F.3d at 1175 n.14.

Case No. 11-21136-CIV-ALTONAGA/Torres

express or implied terms of which include that they "will provide a reasonably safe venue for the CARNIVAL and SINGLESCRUISE passengers, that [they] will assess the risk of danger on [their] premises, that [they] will warn of any dangers, and that [they] will prevent any such dangers" (*id.* ¶ 146); that Belik, like all SinglesCruise passengers who attended the Cozumel Beach Party! event, was "[a]n intended beneficiary of the contract" (*id.* ¶ 147); and that the Señor Frog's Defendants breached the third-party beneficiary contract "by their failure to provide a [sic] safe premises . . . and by failure to provide a reasonably safe event" (*id.* ¶ 148).

In the light of these claims, neither party states with specificity where the breaches by the Señor Frog's Defendants — the wrongful acts — alleged in Counts XI and XII occurred. *See, e.g.*, *Cooper*, 575 F.3d at 1175 (finding that the place of the wrongful act is not where the defect in the foodlift manifested itself, but rather where the foodlift was manufactured and installed); *Reino de España v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 467 (2d Cir. 2012) ("The 'place of the wrongful act is not where the vessel sinks, but where the negligence [or recklessness] occurs.'" (quoting *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 587 (2d Cir. 2005))).

Instead, Defendants suggest that the wrongful act was Plaintiff's accident, and therefore the place of Plaintiff's injury — Mexico — is the place of the wrongful act.  (*See* Mot. 7). Plaintiff provides a non-enlightening response to the issue,[10] but also appears to state that "where

---

[10]  Plaintiff contends that the Court should also consider the place of the wrongful acts committed by Carnival (failure to warn) and the SinglesCruise Defendants (negligent event planning and supervision), which he states "w[ere] either in Miami or on the cruise ship." (Resp. 4).  However, as discussed in Part III.A.1, the Court will only consider *Lauritzen* factors with respect to other parties if such consideration colors the policy of adjudicating the at-issue claims in this forum.  Plaintiff fails to explain, nor does the Court see, why the wrongful acts of other Defendants, which were committed separately from the wrongful acts of the Señor Frog's Defendants, impact the Court's choice of law inquiry here.

Case No. 11-21136-CIV-ALTONAGA/Torres

Belik hit his head" — in Mexico — is the place of the wrongful act with respect to the claims against the Señor Frog's Defendants.  (Resp. 4 (observing that Belik's injury "occurred in navigable water" and that "additional negligence [occurred] in Mexico")).  Nevertheless, although the parties appear to incorrectly identify the relevant wrongful acts, the Court accepts the parties' concurrence that this factor weighs in favor of applying Mexican law.  Further, as there is no allegation that the Señor Frog's Defendants acted outside of Mexico, any breach committed by them would necessarily have occurred in Mexico.

### b.  Allegiance or Domicile of the Plaintiff

The parties concur that Plaintiff is a United States citizen and a resident of New York.  Thus, this factor points toward the application of United States law.

### c.  Allegiance or Domicile of the Defendants

Although one of the *Lauritzen* factors is labeled the "allegiance of the shipowner," the Court's consideration of allegiances need not be limited to shipowners.  *See Cooper*, 575 F.3d at 1175 ("Because this is not an action directly by a seaman . . . the only factors that are relevant to this claim are: . . . (2) the allegiances or domiciles of the *parties*; . . . ." (emphasis added)).  Further, the allegiance of each party is not necessarily afforded equal weight.  Rather, the Court also considers the level of involvement of each of the parties in the at-issue claims.  *See id.* at 1175–76 (carefully examining the role the parties played in the subject wrongful act, namely, the manufacture of the ship or the allegedly defective foodlift).  As the Court has already considered the allegiance of Plaintiff, it now turns to the allegiances of the Defendants.

Palangana is a Mexican limited liability company, and Operadora is a Mexican corporation.  (*See* Mot. 8).  As the claims charge that the Señor Frog's Defendants breached both

14

a contract and a duty owed to Belik, this factor weighs in favor of applying Mexican law.[11]   The allegiances of Carnival and the SinglesCruise Defendants, as advanced by Plaintiff, are with the United States.   (*See* Resp. 4–5).   However, no information has been provided as to what role these Defendants played in the alleged breaches committed by the Señor Frog's Defendants.   *See also supra* n.10.   Accordingly, the allegiances of the non-Señor Frog's Defendants have little to no impact in justifying the application of United States law to Counts XI and XII.

### d.  Place of the Contract[12]

Belik contends there are two relevant contracts with respect to this inquiry.   The first is his ticket contract with Carnival, which was purchased in the United States.   The second contract is the booking of the Cozumel Beach Party! excursion at a SinglesCruise meeting aboard the ship.   (*See* Resp. 5).   In contrast, the Señor Frog's Defendants argue this factor is wholly inapplicable because "Plaintiff did not sign any 'contract' with either Operadora or Palangana." (Mot. 9).   They concede, at most, that Belik exchanged money in Mexico with the Señor Frog's Defendants for drinks he purchased during the shore excursion, and therefore any relevant contract was consummated in Mexico.[13]

---

[11]   During oral argument, Plaintiff discussed the Señor Frog's Defendants' business relationships and other ties to the United States under this factor.   The Court agrees that the nature of the Señor Frog's Defendants' base of operations in the United States may influence these Defendants' allegiance.   *See Vasquez v. YII Shipping Co.*, No. 11-60248-CIV, 2012 WL 6114840, at *2 n.4 (S.D. Fla. Dec. 10, 2012).   Accordingly, based on the Court's base of operations analysis, *see infra* Part III.A.2.g, the weight afforded the Señor Frog's Defendants' allegiance is mitigated.

[12]   "It is . . . fair to say as a general rule that the place of contracting is the place of acceptance."   2 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 6:62, at 905 (4th ed. 2007).

[13]   The Señor Frog's Defendants do not elaborate on why the contract entered into between Belik and the Señor Frog's Defendants when he purchased drinks from the ½ Señor Frog's Restaurant pertains to either Belik's negligence or third-party beneficiary breach of contract claim.   As such, the Court does not address this issue further.

Case No. 11-21136-CIV-ALTONAGA/Torres

The contract or contracts the Court considers under this factor must be relevant to the policy of permitting Plaintiff's negligence and third-party beneficiary claims against the Señor Frog's Defendants.  *See Cooper*, 575 F.3d at 1175 n.14; *supra* Part III.A.1.  The Court proceeds by first examining Belik's booking of the Cozumel Beach Party! excursion before discussing Belik's ticket contract with Carnival.

### i.  Booking of the Cozumel Beach Party! Excursion

Plaintiff alleges the Señor Frog's Defendants and the SinglesCruise Defendants had an "ongoing business and contractual relationship" whereby SinglesCruise funneled its passengers to the ½ Señor Frog's Restaurant by organizing and selling tickets to the Cozumel Beach Party! shore excursion.  (Compl. ¶ 145).  Although Plaintiff acknowledges he does not have a copy of the written agreement (*see id.*), during oral argument, the Court was informed that the Señor Frog's Defendants and the SinglesCruise Defendants reached, through e-mails, a mutual understanding regarding the arrangements for the Cozumel Beach Party! excursion.  Thus, it is to this agreement Plaintiff alleges he became a third-party beneficiary when he booked the excursion through the SinglesCruise Defendants.  (*See id.* ¶ 147 (Count XII)).  Consequently, the Court finds that a proper resolution of the third-party beneficiary claim requires an examination of (1) the contract or excursion booking between Belik and the SinglesCruise Defendants; and (2) the contract or understanding between the SinglesCruise Defendants and the Señor Frog's Defendants.

As to the issue of the shore excursion, although the parties agree that Belik's booking occurred aboard the Panamanian-flagged Vessel while the ship was docked in Mexican waters, they dispute how this fact bears on the place of contracting.  The Señor Frog's Defendants contend the transaction occurred in Mexico; Belik asserts that the Vessel is not a part of Mexico

16

regardless of whether it is located in Mexican territorial waters.  Regrettably, the parties provide

no law supporting their respective positions.  In any event, the Court makes the following two

observations.  First, even if Plaintiff were correct in his assertion that the location of the Vessel

in Mexico's waters is not determinative of the place of the contract, Plaintiff makes no

suggestion what should be deemed the place of Belik's booking.  The only reasonable alternative

is Panama, given that the Vessel is flagged in that country.  However, this determination points

neither to Mexican or United States law and therefore plays no role in the Court's inquiry.  *See*

*Cooper*, 575 F.3d at 1175 n.14.  Second, even if Mexico were deemed to be the place of the

contract as the Señor Frog's Defendants suggest, the location of the Vessel at the time Belik

booked the shore excursion was fortuitous, rendering this fact less weighty in comparison to

other factors.  *See, e.g.*, *Sevison v. Cruise Ship Tours*, No. 1996-57, 1997 WL 530267, at *8

(D.V.I. Aug. 15, 1997).  Thus, the place of Belik's contract with SinglesCruise provides little to

no influence over the Court's choice of law analysis.

　　With respect to the place the SinglesCruise Defendants and the Señor Frog's Defendants

entered into their understanding, the parties barely graze the issue.  Although the Señor Frog's

Defendants urged the Court during oral argument that the contract was entered into in Mexico,

there is no evidence in the record supporting such a conclusion.  Indeed, it was not until oral

argument that it came to light that the contract or understanding was reached by the exchange of

e-mails.  Determining the place of contract based on a series of e-mails can be a "thorny

inquiry," *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1125 (9th Cir. 2008), and

without more evidence and analysis from the parties, the place of this contract is afforded no

weight in the Court's analysis.

Case No. 11-21136-CIV-ALTONAGA/Torres

**ii.  Belik's Ticket Contract with Carnival**

According to Belik, his contract with Carnival is relevant to his claims against the Señor Frog's Defendants because he "could not have attended the excursion if he had not entered into a ticket contract with Carnival, via Carnival's agent SinglesCruise.com."  (Resp. 5).  Belik provides no further explanation supporting this proposition.  As previously discussed, resolution of Belik's third-party beneficiary claim (Count XII) requires an examination of the contract or excursion booking between Belik and the SinglesCruise Defendants.  *See supra* Part III.A.2.d.i. The question for the Court, then, is whether Belik's ticket contract with Carnival is so tied to the excursion booking that an examination of it is necessary to resolve Plaintiff's third-party beneficiary claim.

Belik's argument appears to be premised on the assertion that because only Carnival passengers who purchased their tickets through the SinglesCruise Defendants were permitted to book the excursion, they are the only third-party beneficiaries to the contract between the SinglesCruise Defendants and the Señor Frog's Defendants.  (*See* Compl. ¶ 147 ("An intended beneficiary of the contract, written or oral, between SENOR FROGS Defendants and the SINGLESCRUISE Defendants are all of the SINGLESCRUISE Defendants [sic] passengers who attend the Cozumel Beach Party event, including the Plaintiff herein.")).  At first glance, this argument alone appears insufficient — simply because Belik meets a condition imposed by the SinglesCruise Defendants prior to booking the excursion (i.e., purchasing a Carnival ticket through the SinglesCruise Defendants) does not render the Carnival ticket subject to scrutiny with respect to the third-party beneficiary claim.

However, what renders the Carnival ticket relevant to the third-party beneficiary claim are the circumstances under which it was sold.  Although the SinglesCruise Defendants and

18

Case No. 11-21136-CIV-ALTONAGA/Torres

Carnival did not exchange funds, the record demonstrates they maintained a mutually agreeable business relationship: the SinglesCruise Defendants sold passenger tickets on behalf of Carnival, generating revenue for Carnival; Carnival derived additional revenue from these passengers ("SinglesCruise passengers") through monies they spent onboard; the SinglesCruise Defendants marketed exclusively to SinglesCruise passengers and derived revenue from SinglesCruise passengers through the sale of shore excursions, including the Cozumel Beach Party! excursion; and the shore excursions were sold by the SinglesCruise Defendants in a designated suite[14] aboard Carnival's ship, the *Valor*.  Given this context, the SinglesCruise Defendants were more than mere independent entities selling shore excursions onboard the Vessel.  Rather, both Carnival and the SinglesCruise Defendants were well aware of, derived benefit from, and promoted the fact that a Carnival ticket purchased through the SinglesCruise Defendants offered more than a passenger ticket not purchased through them.  (*See, e.g.*, Belik Depo. 984:17–985:4 [ECF No. 252-1] (describing how an e-mail sent by SinglesCruise characterized its organized activities as "private and exclusive to those booked on the cruise with us, so please do not bring anybody to these functions who are not officially reserved with SinglesCruise.com")).  Representative of this understanding is the contract between the SinglesCruise Defendants and Carnival, which incorporated the terms of Carnival's ticket contract.  Furthermore, in arranging the Cozumel Beach Party! excursion with the SinglesCruise Defendants, the Señor Frog's Defendants intended to benefit from the Carnival-SinglesCruise relationship.

For the foregoing reasons, Belik's ticket contract with Carnival, the purchase of which opened the door to marketing and excursion opportunities from SinglesCruise — including the

---

[14]  It is not evident from the record whether the suite was provided gratis by Carnival to the SinglesCruise Defendants for the purpose of booking various shore excursions.

19

Case No. 11-21136-CIV-ALTONAGA/Torres

Cozumel Beach Party! shore excursion — is relevant to the Court's analysis of Belik's third-party beneficiary claim against the Señor Frog's Defendants.  Thus, the place of Belik's ticket contract with Carnival — the United States — will be considered in the Court's choice of law inquiry.

### e.  Accessibility of the Foreign Forum

The parties do not assert that the Court is incapable of applying the law of Mexico to this case.  Accordingly, "any potential inaccessibility of [the] foreign forum [is] irrelevant."  *Reino de España*, 691 F.3d at 467 n.8.  Further, this factor is "more pertinent to a *forum non conveniens* test than to a choice of law analysis."  *Cooper*, 575 F. 3d at 1175 n.14.

### f.  Law of the Forum

It appears that the Señor Frog's Defendants interpret this factor to refer not to the forum's own law, but to the law the forum must apply upon resolution of a choice-of-law analysis.  (*See* Mot. 9–11 (presuming that Mexican law applies, identifying areas in which there are relevant conflicts between Mexican and United States law, and concluding that because of those conflicts, "this factor . . . weighs against the application of American law to the Plaintiff's claims against the Defendants")).  The Señor Frog's Defendants are mistaken, as it is the forum's own law to which the inquiry references.  *See Lauritzen*, 345 U.S. at 590 ("It is urged that, since an American forum has perfected its jurisdiction over the parties and defendant does more or less frequent and regular business within the forum state, *it* should apply *its own* law to the controversy between them." (emphasis added)) (summarizing the injured seaman's argument and observing that the law of the forum is typically a result of "fortuitous circumstances which often determine the *forum*" (emphasis added)).

20

Case No. 11-21136-CIV-ALTONAGA/Torres

Due to "fortuitous circumstances," the law of the forum is generally "of little relevance in United States courts."  *Reino de  España*, 691 F.3d at 467 n.8 (quoting *Rationis*, 426 F.3d at 587); *see Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985) (quoting *Lauritzen*, 345 U.S. at 590–91).  "Because a law of the forum is applied to plaintiffs who voluntarily submit themselves to it is no argument for imposing the law of the forum upon those who do not." *Lauritzen*, 345 U.S. at 592.  Here, however, Plaintiff did not voluntarily submit himself to the Southern District of Florida.  Belik is a resident of New York and has travel limitations due to his injuries.  Belik has brought the action in this forum pursuant to his ticket contract with Carnival, which requires that suit be filed against Carnival only in this District.  (*See* Compl. ¶ 9).  Although the forum selection clause contractually binds only Plaintiff, Carnival, and SinglesCruise,[15] the Court does not ignore the litigation realities faced by Plaintiff.  Preservation of Plaintiff's resources and judicial economy would likely counsel that Plaintiff's action against all Defendants be brought in the same forum.

The Señor Frog's Defendants argue that it is unfair that a forum selection clause in a contract to which they are not a party weighs against the application of Mexican law in the Court's choice of law analysis.  However, the Señor Frog's Defendants are not unwitting third-parties — Plaintiff's injury resulted while he attended the Cozumel Beach Party! excursion, which operated under an understanding between SinglesCruise and the Señor Frog's Defendants for their mutual benefit.

For these reasons, the Court will afford this factor some weight and finds that it tips in favor of applying United States law.

---

[15]  Carnival's ticket contract is incorporated into the contract between Carnival and SinglesCruise.

Case No. 11-21136-CIV-ALTONAGA/Torres

### g. Defendants' Base of Operations

The Señor Frog's Defendants do not disagree with Plaintiff's assertion that both Carnival and the SinglesCruise Defendants maintain bases of operations in the United States, specifically, Florida. (*See* Resp. 6; Reply 7). What remains for the Court to examine is whether the Señor Frog's Defendants have bases of operations[16] in the United States. *See Rhoditis*, 398 U.S. at 309.

Palangana and Operadora are Mexican corporate entities wholly owned by Mexican nationals. (*See* Reply 7). Palangana operates the ½ Señor Frog's Restaurant, which hosted the Cozumel Beach Party! excursion. In order to obtain permission to use the "Señor Frog's" brand name for its restaurant, Palangana first entered into a franchise agreement with Operadora, the exclusive license holder of the brand name "Señor Frog's."

Ninety-five percent (95%) of the patrons at the ½ Señor Frog's Restaurant are "U.S. based cruise passengers." (Resp. 6, 27). The Señor Frog's Defendants entered into an agreement with the U.S.-based SinglesCruise Defendants, through a series of e-mails, to funnel SinglesCruise passengers to the Restaurant. Pursuant to this agreement, Plaintiff and other SinglesCruise passengers were directed to the ½ Señor Frog's Restaurant. Additionally, prior to Plaintiff's excursion, the SinglesCruise Defendants funneled one other group of SinglesCruise passengers to the Restaurant. Further, Operadora has relationships with a number of companies

---

[16] The existence of a base of operations in Mexico does not preclude the finding that a base of operations is also present in the United States. Further, the Court emphasizes that the inquiry it is tasked with is whether Palangana and Operadora each have a base of operations in the United States, not whether they each have a *substantial* base of operations in the United States. *See Vasquez*, 2012 WL 6114840, at *2 (explaining that when all *Lauritzen* factors point to the law of the foreign venue, a substantial United Sates base of operations may demonstrate that application of United States law is warranted).

22

Case No. 11-21136-CIV-ALTONAGA/Torres

in the United States: a Texas-based company; and a franchise in Orlando, including an Orlando-based restaurant for which personnel decisions were made in the United States.[17]

The Court finds that the Señor Frog's Defendants maintained bases of operations in the United States. Nearly all of the customers at the ½ Señor Frog's Restaurants were United States cruise ship passengers. Recognizing the Restaurant's primary revenue source, the Señor Frog's Defendants entered into an arrangement with United States companies, the SinglesCruise Defendants, to direct the stream of cruise ship passengers to its business. Operadora has business relationships with multiple entities in the United States, including all of its U.S.-based franchisees. Moreover, as a franchisor of the "Señor Frog's" name, Operadora has an interest in how its name is used, i.e., how its franchisees operate.

### h.  Totality of the Circumstances

An analysis of the foregoing factors demonstrates that the Señor Frog's Defendants' United States base of operations, law of the forum, place of Belik's ticket contract, and Plaintiff's domicile outweigh the place of the wrongful act and the Señor Frog's Defendants' allegiances. Thus, the Court finds that United States law applies to Belik's claims against the Señor Frog's Defendants. Accordingly, this case may not be dismissed for *forum non conveniens*.

---

[17]  These facts were presented to the Court during oral argument. Plaintiff represents such facts came to light during a deposition of Operadora's corporate representative. To the Court's knowledge, that deposition is not part of the current record. Nonetheless, the Court accepts these facts as true for the purposes of resolving the Motion, as (1) Operadora did not dispute the veracity of these statements at the December 20 hearing, and (2) after the deposition, Operadora withdrew its personal jurisdiction challenge. (*See* Notice dated May 16, 2012 [ECF No. 193]).

Case No. 11-21136-CIV-ALTONAGA/Torres

**B. Traditional *Forum Non Conveniens* Analysis**

Even if it were necessary for the Court to consider the traditional *forum non conveniens* factors, the Court still finds dismissal of this case inappropriate.

The Supreme Court has "characterized *forum non conveniens* as, essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Sinochem*, 549 U.S. at 429 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)). "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009); *see also Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2007 WL 3054986, at *3 (S.D. Fla. Oct. 16, 2007) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947)). "This tool 'is to be favored' for ensuring that federal courts only hear 'those cases where contacts with the American forum predominate.'" *Aldana*, 2007 WL 3054986, at *3 (quoting *Sigalas*, 776 F.2d at 1519 n.10).

In determining whether to dismiss a case based on the doctrine of *forum non conveniens*, the Court must: (1) decide whether an adequate alternative forum exists which has jurisdiction over the case, (2) weigh the private interest factors of the parties with a presumption in favor of the plaintiff's initial forum choice, (3) if the balance of private interests is at or near equipoise, determine if the factors of public interest favor a trial in the foreign forum, and (4) assess whether the plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). The private interests courts consider are: (a) the relative ease of access to sources of proof; (b) the cost of

24

Case No. 11-21136-CIV-ALTONAGA/Torres

obtaining the attendance of willing witnesses and the ability to compel the attendance of unwilling witnesses; (c) the possibility of viewing the premises, if a view would be appropriate to the action; (d) the enforceability of a judgment in a forum; and (e) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Gulf Oil*, 330 U.S. at 508; *Pierre-Louis*, 584 F.3d at 1056 (quoting *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356–57 (11th Cir. 2008)).  The public interest factors assessed include: (a) the administrative congestion resulting from cases being tried at a site other than their origin, (b) the forum's interest in the dispute, (c) the burden of jury duty on the community in which the court sits, and (d) difficulties associated with applying foreign law. *See Gulf Oil*, 330 U.S. at 508–09; *Pierre-Louis*, 584 F.3d at 1056 (quoting *Liquidation Comm'n of Banco Intercontinental*, 530 F.3d at 1356–57).  In evaluating the private and public interests implicated by the venue of the litigation, "the district judge must consider the level of deference to accord the plaintiff's choice of forum." CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3828 (3d ed. 2007).

Defendants accurately note that courts have repeatedly found Mexico to be an adequate alternative forum within the context of a *forum non conveniens* analysis.  (*See* Mot. 18 & n.11 (citations omitted)).  Plaintiff objects to such a finding here as he argues a Mexican court lacks jurisdiction over Carnival and the SinglesCruise Defendants.  However, according to Plaintiff's Mexican law expert, "foreign persons" who "submit themselves expressly through an express agreement . . . could be sued in Mexico" (Ovalle Depo. 48:7–12 [ECF No. 258-1]), and both Carnival and the SinglesCruise Defendants have provided consent.  For example, during oral argument, it was represented to the Court that Carnival would expressly consent to suit in Mexico.  Additionally, the Court construes the SinglesCruise Defendants' statement that

25

"Mexico provides an adequate forum for the action to be determined" ([ECF No. 220]), as an expression of its consent to a Mexican court.

It is unclear why Plaintiff also argues that the contract between Carnival and SinglesCruise, which incorporates the forum selection clause in the Carnival ticket, prevents the SinglesCruise Defendants from consenting to Mexican jurisdiction, as he provides no further explanation.  (*See* Resp. 12).   Regardless, both Carnival's and the SinglesCruise Defendants' mutual consent to suit in Mexico would appear to abrogate any previously agreed upon contractual term.   Having found Mexico to be an alternative and available forum, the Court now proceeds to weigh the private interest factors.

At the outset of a *forum non conveniens* analysis, there is a strong presumption in favor of the plaintiff's initial forum choice.   *See Gulf Oil*, 330 U.S. at 508 (finding "unless the balance [of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").   The presumption in favor of the plaintiff is strongest when the plaintiff is a citizen or resident of the United States.   *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (citation omitted).   Here, Plaintiff's "choice" to initiate litigation in the Southern District of Florida was compelled by the forum selection clause in his ticket contract with Carnival.

Regarding the first private interest factors, the availability of witnesses and sources of proof, the Señor Frog's Defendants argue that "live" testimony of the accident (Mot. 22), is critical to their defense as it goes to the issue of causation (*see id.* 20), and that witnesses who are located in Mexico "can neither be compelled for deposition, nor brought before the Court during trial." (*Id.*).   Even for Mexican witnesses who are willing to travel to the United States — such

as the lifeguard, Mr. Valencia — the Señor Frog's Defendants suggest they will have great difficulty in securing appropriate visas for travel.  (*See* Reply 14).

These arguments fail to persuade.  Foremost, the parties agree that there were several eyewitnesses to the accident, some of whom reside in the United States and others who reside in Mexico.  Thus, in contrast to cases where courts have determined that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants," *Gulf Oil*, 330 U.S. at 511, not all eyewitnesses or other relevant witnesses are available only in the foreign forum.  The Señor Frog's Defendants wholly fail to explain why testimony from witnesses who reside in the United States is insufficient to convey the nature of the accident.[18]  Indeed, at least two witnesses, cruise directors, Shelby Bergeron and Harvey Greck, reside in Florida.  (*See* Mot. 22; Resp. 18).

Second, even if testimony from certain Mexican witnesses (who are not agents, employees, or otherwise under the control of the Señor Frog's Defendants) may be particularly relevant, the Señor Frog's Defendants are silent as to why letters of request or letters rogatory could not be sent to the appropriate Mexican authority pursuant to the Hague Convention to assist them in securing depositions in Mexico or obtaining other evidence.[19]  Third, even if travel to the United States is foreclosed to certain Mexican witnesses due to difficulty in obtaining visas, the Señor Frog's Defendants fail to specifically explain why live testimony from these

---

[18]  Even if nearly all of the United States witnesses to the accident reside outside of Florida, as suggested by the Señor Frog's Defendants (*see* Resp. 20, 21), appropriate subpoenas can be issued pursuant to Federal Rule of Civil Procedure 45.

[19]  Video depositions of some Mexican-based witnesses have already occurred.  (*See* Resp. 17).

witnesses is crucial to their defense against Belik's negligence and third-party beneficiary breach of contract claims.  For example, the Señor Frog's Defendants raise the testimony of Mr. Aviles, a resident of Mexico who photographed the accident, as an issue.  Although the Court can see that the Señor Frog's Defendants may need to rely on Mr. Aviles to authenticate the photograph, Defendants are themselves silent as to why Mr. Aviles must testify in person.  Thus, although the Court is mindful that litigants should not be forced to try cases by deposition, *see Gulf Oil*, 330 U.S. at 511, the existence of some witnesses in a foreign forum — the necessity of whose testimony has not been demonstrated — is not sufficient to defeat a plaintiff's choice of forum, especially where, as here, a significant number of witnesses reside in the United States.  *See Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1264 (S.D. Fla. 2001) (citing *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991)).

    In addressing several of the relevant factors, the Señor Frog's Defendants repeatedly characterize Belik's action as one for premises liability.  Defendants point to no specific portion of the Complaint to support their characterization, e.g., there is no claim against the Señor Frog's Defendants as property owners.  Further, it is uncontested that the Señor Frog's Defendants did not own the dock from which Belik dove into the ocean.  Accordingly, the Court is unconvinced that such a characterization is helpful to the Court's inquiry.  Nonetheless, because Belik's claims allege, among other things, that the venue was not "appropriate" or "safe" (Compl. ¶ 149d), evidence acquired for trial would likely include an evaluation of the accident site.  This does not mean, however, that the Court or the trier of fact is required to actually view the premises, or that such a viewing is even advisable.  Indeed, although the Señor Frog's Defendants contend that a jury would benefit from being able to see the water and appreciate its depth, the viewing would only "benefit" the trier of fact if the clarity of the water is the same on

the day of viewing as on the day of Belik's accident.  The Señor Frog's Defendants do not address this concern, nor do they explain why witnesses of the accident could not adequately testify as to the water's clarity.  Accordingly, this factor does not bear on the Court's evaluation of the private interest factors.

The enforceability of a judgment obtained in either forum is uncontested by the parties, and therefore does not weigh on the Court's analysis.  As Plaintiff is unable to travel to Florida, let alone Mexico, that, too, does not affect the Court's decision.  The Court also gives little weight to the Señor Frog's Defendants' argument that they cannot obtain one binding judgment as to all parties because of their inability to implead third-parties.  The Señor Frog's Defendants offer no support for this assertion, such as whether the potential third-parties — the Mexican government or government-controlled entities — are beyond the reach of the Court's compulsory process or are otherwise not amenable to service.  (*See, e.g.*, Mot. 25 n.18 (citing to the Salgado Declaration ¶¶ 24–26 [ECF No. 248-2] and Lizarraga Declaration ¶ 12 [ECF No. 248-3], both of which discuss the ownership of certain relevant property, but neither of which explains why third-parties outside the United States cannot be effectively impleaded)).

Thus, none of the private interest factors weigh in favor of transferring this action to a foreign forum.  Given the strong presumption in favor of Plaintiff's choice of forum, particularly since Plaintiff, a United States resident, was obligated to file this action here pursuant to a contractual forum selection clause, the Court finds that the balance of private interests favors a trial in the Southern District of Florida.

The Court need not address public interest factors as the balance of private interests heavily favors retaining the action.  Regardless, the Court makes two observations.  First, United States law is applicable to this matter, which counsels against relegating these claims to

Case No. 11-21136-CIV-ALTONAGA/Torres

adjudication in a foreign forum.  Second, the Señor Frog's Defendants repeatedly dodge an analysis of the public interest factors with respect to the interests of the appropriate domestic forum — the United States — not merely Florida.  *See Wilson*, 590 F.3d 1264 at 1271 (finding the district court improperly limited its consideration of *forum non conveniens* test to just one judicial district, as "[t]he relevant forum for purposes of the federal forum non conveniens analysis is the United States as a whole" (internal quotation marks, alterations, and citation omitted)).  Indeed, it would be highly unfair for a plaintiff to be bound by a domestic forum selection clause, only to have his claims dismissed to a foreign forum by foreign defendants — who have a significant relationship with the defendant that contracted for the forum selection clause — due to any limited connection of the action to the selected domestic judicial district.  In other words, the Court does not find that "material injustice is manifest" by permitting the action against the Señor Frog's Defendants to move forward in this venue.  *McLane v. Los Suenos Marriott Ocean & Golf Resort*, 476 F. App'x 831, 833 (11th Cir. 2012) (quoting *SME Racks*, 382 F.3d at 1101)).

For the foregoing reasons, the Court finds the Señor Frog's Defendants have failed to meet their burden in opposing Plaintiff's choice of forum.

## IV.  CONCLUSION

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 247]** is **DENIED**.

30

Case No. 11-21136-CIV-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 25th day of January, 2013.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record